## Commonwealth v. Riley.

(Decided June 24, 1921.)

### Appeal from Anderson Circuit Court.

1. Arrest—Arrest Without Warrant.—An officer may make an arrest without a warrant when the offense is committed in his presence,

or if not committed in his presence if he has reasonable grounds to believe that the person arrested has committed a felony and if the facts upon which he acts, as constituting reasonable grounds for his belief, are such as to induce in the mind of a reasonably discreet and prudent person, situated as the officer was, the belief that the person apprehended had committed a felony, the arrest will be legal although it should eventually turn out that in fact no offense had been committed.

2. Searches and Seizures—Search of Person, Baggage or Vehicle—Arrest.—No one, not even an officer, is allowed to search one's premises, person or belongings coercively and without his consent and against his protest for the purpose of obtaining evidence against him, and evidence thus obtained can not be used against the accused; but a search of one's person, or the baggage or vehicle in his possession at the time he was lawfully arrested, is not an unreasonable search as is denounced by the constitutional provisions, and evidence so obtained is competent evidence against the one arrested upon his trial for the offense preferred against him.

3. Burglary—Possession of Burglars' Tools.—Upon the trial of one under an indictment for having in his possession burglars' tools, with the intention of using them burglariously as denounced by section 1159 of the Kentucky Statutes, it is not essential to constitute the crime that the tools and implements found in the possession of the accused should be specially manufactured or designed for the use of burglars, since it is sufficient if the tools and implements are such as are generally used by burglars and which are suitable for that purpose, although they also may be such tools and implements as are manufactured and used for lawful purposes.

CHAS. I. DAWSON, Attorney General, W. T. FOWLER, Assistant Attorney General, CHAS. H. MORRIS, CHAS. H. SANFORD and L. W. McKEE for appellant.

LILLARD CARTER and F. R. FELAND for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Certifying the law.

The appellee, Clyde Riley, was jointly indicted by the grand jury of Anderson county with Virgil Miller, in which indictment they were accused of "feloniously having in their possession tools, implements and other things used by burglars for housebreaking and forcing doors and locks and places where goods, wares and money are kept with the intention of using said tools and other things burglariously," an offense denounced by section 1159 of the Kentucky Statutes. Upon his separate trial

under that indictment the appellee was, pursuant to a peremptory instruction of the court, acquitted of the charge, and to obtain a certification of the questions of law involved the Commonwealth prosecutes this appeal pursuant to the provisions of section 337 of the Criminal Code. Before the defendant was arraigned for trial Virgil Miller was tried under a separate indictment for another offense and was convicted and sent to the penitentiary where he was confined at the time of the trial of the appellee under the indictment referred to.

As we understand the record the principal questions involved and the ones which influenced the court in directing an acquittal are: (1) That the sheriff who arrested the defendants under the indictment, but before it was returned, not having a warrant to do so was without authority to make the arrest, because of which (2), the alleged burglarious tools and other articles found in the possession of appellee and his co-defendant, Miller, were incompetent as evidence against him under the principles laid down by this court in the recent case of Youman v. Commonwealth, 189 Ky. 152, and by the Supreme Court of the United States in the still more recent case of Gouled v. United States, 41 Sup. Ct. Rep. 261; — U. S. —, 65 L. ed. 311; and a possible ground (3) was, that the tools found in the possession of the defendants in the indictment by the officers when they were arrested were not such as could, within the contemplation of the statute, be characterized as "burglar's tools." We will dispose of these ground as briefly as possible in the order named.

1. Subsection 2 of section 36 of the Criminal Code authorizes a peace officer to make an arrest, without a warrant "when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony." There being no warrant in this case, and no felony committed in the presence of the officer, the subject matter of inquiry is narrowed to the question, whether the officer at the time he arrested the defendants in the indictment had reasonable grounds to believe that they had committed a felony. The arrest was made between 12 and 1 o'clock at night. The defendants were first seen together in a buggy on a private road leading from the turnpike to the Bond & Lillard distillery and warehouses adjacent. They were coming from the direction of the

warehouses in which was stored whiskey, and in the buggy, with the aid of lights from automobiles suddenly turned on, the sheriff and his summoned assistants, not only recognized the occupants of the buggy, but they saw therein some of the tools and a sack made of some kind of cloth which, as it turned out, contained other tools. The sheriff testified on this point that "they had all these paraphernalia here, there was all of it in the bottom of the buggy and they had the top back; you could see them." The articles found in the buggy, claimed by the Commonwealth to be burglar's tools, were one brace, two bits, a funnel, a pinch bar about one and one-half or two feet long and one-half inch in diameter, about twenty feet of sectional hose, two five gallon coal oil cans, one three gallon jug, one gallon bottle and two empty one-half gallon fruit jars. The defendants were also armed with weapons. After the light was turned on the buggy in which defendants were riding they continued to travel the private road until they got to the pike and then traveled it until they got to the gate leading to the home of the appellee, when the officers who were traveling immediately behind them made the arrest complained of. The sheriff testified that just before or about the time the parties arrived at the gate through which they started to go to the appellee's home he turned his machine beside the buggy when he heard Miller say: "Riley, he has got us, by God he has got us," and appellee replied, "Keep quiet." The sheriff, while on the stand, testified, in answering a question as to whether he had a search warrant, that "there was nothing to search, it was all in plain view," meaning the tools in the buggy. He was asked, "When you arrested them you looked into their buggy?" and he answered, "Yes, sir, they told me they had nothing, then they invited me to look to show me they had no whiskey in their buggy." After the arrest the defendants were carried before the county judge who issued a warrant for their apprehension and later the indictment under which appellee was tried was returned. At and for some time prior to the arrest of the defendants in the indictment, W. A. Husbands was one of the night guards or watchmen at the Bond & Lillard warehouses. Late in the afternoon of the same day Miller had a conversation with Husbands in a pool room in Lawrenceburg, in which he suggested to Husbands that he, Miller, and "his buddy" would come to the warehouse

that night to procure whiskey if opportunities could be made favorable, and Miller testified that Husbands agreed to roll a barrel of whiskey near to a hole through the door, or side, or perhaps the floor of the warehouse, from which he and "his buddy" were expected to extract the whiskey. A citizen of the town by the name of Walter Gritten overheard that conversation and reported the facts to the sheriff. The same witness also saw Miller late at night going in the direction of the home of the appellee, as well as in the direction of the warehouse, and that fact was also reported to the sheriff. A considerable number of burglaries had recently been committed by breaknig into whiskey warehouses in and around Lawrenceburg, and the obtention of the whiskey for which the burglaries were committed was made by boring holes in barrels and inserting therein some kind of tube or hose through which the whiskey would be conveyed into receptacles provided by the burglar for the purpose of carrying it away. The sheriff knew all these facts and the further fact that vessels, such as were found in defendant's buggy at the time he was arrested, were used for that purpose.

The question, therefore, is whether the sheriff under these facts, all of which he knew before he arrested appellee, had reasonable grounds to believe that the occupants of the buggy had committed a felony, either (a), by having actually broken into a warehouse and obtained whiskey, which possibly was in some of the vessels which they had with them, or (b), by having in their possession the character of tools with which similar burglaries had been committed and that if they had not actually committed burglary that they intended to do so.

What constitutes reasonable grounds justifying an arrest without a warrant is thus very aptly stated in 5 Corpus Juris, 417: "The reasonable and probable grounds that will justify an officer in arresting without a warrant one whom he suspects of felony must be such as would actuate a reasonable man acting in good faith. The rule is substantially the same as that in regard to probable cause in actions for malicious prosecution, and there is no difference in its application between arrests for felonies and arrests for misdemeanors. The necessary elements of the grounds of suspicion are that the officer acts upon a belief in the person's guilt, based either upon facts or circumstances within the officer's

own knowledge, or upon information imparted to him by reliable and credible third persons, provided there are no circumstances known to the officer sufficient to materially impeach the information received.'' The same rule is set forth in 11 R. C. L. 801, and it was adopted by this court in the comparatively recent case of Grau v. Forge, 183 Ky. 521. In the Grau case the officer had been told by an apparently intelligent boy that the person arrested had attempted to rob him and he pointed out the would be robber to the officer who made the arrest without a warrant. We held in that case that, there being nothing to indicate that the sheriff's informant was either mistaken or wilfully misrepresenting the facts, the information furnished by him and which possessed the earmarks of truth was sufficient to constitute reasonable grounds to authorize the officer to make the arrest without a warrant. And that ruling, as will be seen, is not only supported by the text from Corpus Juris and R. C. L., *supra,* but is likewise adopted by a great number of the courts in this country, as will be seen from the notes thereto. Without taking the time to analyze or apply the facts which were in the possession of the sheriff at the time he made the arrest in this case, we unhesitatingly say that at that time he had reasonable grounds to believe, either that a burglary had been committed by the appellee and his companion in the buggy, or that they expected to commit one with the tools they had in their possession; in either of which events he was authorized to make the arrest, although according to the case, *supra,* no felony in fact had been committed.

(2) From the foregoing it results that neither the principles announced in the Youman case, nor in the Gouled case apply, since the essence of those opinions is that the search resulting in the development of the contested evidence must be either a forcible one involving some coercion on the part of the officer, or it must be made after admission gained to the searched premises through stealth and deception so that the search would be against the will or consent of the defendant. Such was the holding in the Gouled case and we so interpreted the Youman case in the later ones of Banks v. Commonwealth, 190 Ky. 330, and Turner v. Commonwealth, 191 Ky. 825. All the books and all the cases agree, including the Youman case, that evidence found by searching the defendant when he is lawfully arrested may be used

against him and that such evidence does not come within the constitutional inhibitions against "unlawful search and seizure" of either one's premises or his person. Additional authorities for this proposition to those above referred to are, 5 Corpus Juris, 434; Weeks v. United States, 232 U. S. 383; Armstrong v. Commonwealth, 190 Ky. 219, and Wallace v. Commonwealth, 187 Ky. 775.

3. Disposing of the possible ground (3) as one influencing the court in sustaining appellee's motion for a peremptory instruction for the jury to acquit him, we have only to say that the tools or implements and other things in the possession of the defendant, in this character of prosecution, need not be articles specially manufactured and designed for the use of burglars alone, but they may be any tools, implements or things which in the language of the statute are "used by burglars for housebreaking, forcing doors, windows, locks, or buildings," etc., although they may be such as are adapted for use in the accomplishment of lawful and legitimate purposes. If the language of the statute should be construed so as to require that such tools, etc., should be specially manufactured and designed for burglarious purposes, we doubt if any defendant could ever be convicted under the statute, not only because, as we surmise, that there is no such manufacturing establishment, but also because of the great difficulty which the Commonwealth would encounter in proving that fact, to say nothing about the strained construction of the statute which that interpretation would require. If the tools are such that they may be used to commit burglary, and the circumstances be such as to lead a reasonably prudent man to believe beyond doubt that the intention of their possessor was to use them for that purpose, the offense is complete. We feel that this interpretation of the statute is so plain as to need no fortification of authorities. But all the courts before which the question has been presented, so far as we are able to learn, have adopted the same view, as will be seen from an extended note to the case of State of Wisconsin v. Boliski, 50 L. R. A. (N. S.) 825. In that note it is stated that "It is not necessary to prove that all the implements mentioned in an indictment be adapted to effect the objects charged," and that "If they are suitable for the purpose, so that they can be used to break and enter burglariously, it is wholly immaterial that they were also designed and

adapted for honest and lawful uses. A chisel or centerbit, though a tool in common use for ordinary purposes, is quite as efficacious in the hands of a burglar to carry out his felonious intent, as a jimmy or a lockpicker, which is made for the sole purpose of being used to break and enter buildings.'' Further along in the note it is shown that none of the tools found in the possession of the defendant need be adapted to the commission of the offense of burglary only, and that where the defendant had in his possession a hammer, a cold chisel and a file, and there was further evidence to prove an intent on his part to use them burglariously, a conviction would be authorized. The same note contains cases holding that the purpose of defendant in having in his possession ordinarily useful tools may be shown by other articles which he had in his possession, and which other articles were suitable and adapted to the harvesting of the fruits of a burglary or a particular kind of burglary. Just as in this case the empty cans, bottles and jugs found in the possession of the appellee by the officer who arrested him might not in any sense be considered as burglar's tools, but they are articles and implements suitable for the full purpose of, and ordinarily used by, those who commit burglary upon a whiskey warehouse.

That the intention of appellee and his co-defendant to so use those articles and the tools found in their possession there can be but little doubt in our minds from the testimony of appellee's co-defendant, Miller, which is corroborated by other testimony in the case but which we deem unnecessary to point out. As was to be expected he was a most reluctant witness for the Commonwealth and on every hand tried to shield the appellee by the suppression of any guilty fact against him, and it was only after a most rigid examination that he was made to tell about the future plans of himself and the appellee with reference to entering the warehouse with the tools which he claimed to have found the evening before in a clump of bushes nearby it. He also tried hard to conceal the fact of appellee's knowledge of the arrangement with the watchman Husbands, and in parts of his testimony he made the unbelievable statement that appellee's act in accompanying him that night was no more culpable than to see if whiskey was contained in the oil cans and other receptacles alleged to have been hidden in the bushes. Under such circumstances one

wonders why appellee consented to carry those tools and implements, which were shown not to belong to him, from the place where they were alleged to have been found to his home. The jury had the right to consider the extraordinary and unnatural features of the witness's testimony and his evident purpose to conceal, as much so as they had the right to consider his express statements affecting the guilt of appellee. But whether or not there was evidence sufficient to convince the jury beyond a reasonable doubt of appellee's guilt, there was certainly sufficient evidence to authorize a submission of the case to it under proper instructions and the court erred in directing an acquittal of the defendant.

Wherefore, this opinion is certified as the law of the case.