**Beve STEWART, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 1, 1973.

Sampson B. Knuckles, Barbourville, for appellant.

Ed W. Hancock, Atty. Gen., Frankfort, James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

REED Justice.

The defendant, Beve Stewart, was indicted for malicious shooting and wounding. (KRS 435.170). The case was set for trial. On the day of trial, a panel of jurors was called, voir dire conducted and twelve jurors were accepted and sworn to try the case. The indictment was read to the jury, counsel for the prosecution made an opening statement, and evidence for the prosecution was then introduced. The court recessed for lunch.

During the noon recess, the trial judge was advised by the prosecutor that he had discovered that one of the jurors, a man named Deaton, was married to the defendant's first cousin. At a hearing in chambers, Deaton admitted that he had known the defendant for twelve or thirteen years, and lived about a mile and a half from the defendant's house in a rural area. When asked why he had not disclosed the existence of his relationship by marriage in response to a specific question concerning it on voir dire, he replied that he was "kind of dumb on this." The trial judge sustained the prosecution's motion for a mistrial over the defendant's objection. The jury was discharged and the case was continued for a retrial before a new jury.

When the case was called for trial the second time, the defendant moved to dismiss upon the ground of former jeopardy. The trial judge denied the motion and this trial proceeded to verdict and judgment. The defendant was convicted and sentenced to confinement in the county jail for one year and was fined $200. On this appeal, which we have granted from that disposition, defendant's sole contention is that his constitutionally guaranteed right of freedom from double jeopardy was violated.

Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), held that the double jeopardy clause of the Fifth Amendment to the Constitution of the United States applied to the states through the due process clause of the Fourteenth

Amendment to the same document. The basis of the holding was that freedom from double jeopardy is "fundamental to the American scheme of justice." Later in the same year Benton was decided, this court recognized the federal authority when in Hemphill v. Commonwealth, Ky., 448 S. W.2d 60, it overruled its prior holding in Blanton v. Commonwealth, Ky., 320 S.W. 2d 626 (1949).

In United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Supreme Court addressed itself to the effect of the concerned constitutional guaranty when a mistrial is declared without the defendant's consent. Although the principal opinion was a plurality rather than a majority pronouncement, the dispositive holding of the case represented a conclusion of the court that the defendant could not be retried, despite the prosecution's assertion on its direct appeal from an adverse trial court ruling that a retrial was permissible in the circumstances, and that the Supreme Court had jurisdiction to so declare.

In Jorn, the trial judge declared a mistrial on his own motion because he apparently concluded that several witnesses for the prosecution had not received adequate advice and warning concerning their rights against self incrimination. Neither the prosecution nor the defense sought the mistrial. When the prosecution attempted to effect a retrial before a new jury, the trial judge dismissed the indictment on the defendant's motion because he concluded that the defendant, having been placed in jeopardy at the former trial, could not be tried again for the same offense. The plurality opinion of the Supreme Court expressed the conclusion that since the trial judge had "abused his discretion" in declaring a mistrial without the defendant's consent, the double jeopardy guaranty prohibited a retrial for the same offense.

The dissenting opinion disagreed with the test expressed in the plurality opinion. The thrust of the dissent was directed against the impression, which the dissenting justices thought the plurality conveyed, that the test was whether the trial judge "abused his discretion" in granting a mistrial in the context of good trial practice; the real issue, according to the dissent, was whether there had been an "abuse of the trial process resulting in prejudice to the accused." It is clear, however, that all of the Justices who considered the merits adhered to the historical precedents that regarded the constitutional guaranty against double jeopardy not to be an absolute, literal imperative against reprosecution without regard to countervailing compelling circumstances inherent in the administration of the criminal justice system for the protection of society.

The Jorn plurality opinion traced the history and approach of the Supreme Court cases that have considered the issue from United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) to Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). The central theme in all of the opinions is that reprosecution of a defendant is not constitutionally barred if his first trial is aborted by the trial judge, even without the defendant's consent, because of a "manifest necessity" to vindicate the ends of public justice; the determination of the existence of this required condition, however, must be made with the greatest caution, under urgent circumstances and *for only very plain and obvious causes.*

Section 13 of the Constitution of Kentucky states: "No person shall, for the same offense, be twice put in jeopardy of his life or limb." An exhaustive treatment of the development of double jeopardy law applicable to mistrials in Kentucky is contained in Mullins v. Commonwealth, 258 Ky. 529, 80 S.W.2d 606 (1935). The test of "manifest necessity" is approved and the impossibility of formulating neat categorical pigeon holes to determine the existence of this "necessity" is noted in the opinion. Later Kentucky cases have followed this basic approach. See, for example, Baker v. Commonwealth, 280 Ky. 165,

132 S.W.2d 766 (1939), and Commonwealth v. Payne, Ky., 245 S.W.2d 581 (1952). In Jorn, the plurality opinion rejected as impracticable "brightline rules" to determine the existence of a "manifest necessity."

Our original opinion in this case interpreted the Jorn opinion to require a finding that the action of the trial judge in this case was not dictated by manifest necessity and that Stewart's plea of double jeopardy was sustainable. Prior to the issuance of a mandate to that effect, however, we noted the subsequent decision of the Supreme Court of the United States in Illinois v. Somerville, 410 U.S. 458, 93 S. Ct. 1066, 35 L.Ed.2d 425 (decided February 27, 1973). We thereupon directed that the mandate be withheld and the parties brief the question of the effect of the Somerville decision.

The Somerville decision reached by a clear majority of the Supreme Court, in which the Jorn case is reviewed, reveals to us that we were about to share the experience of the United States Court of Appeals for the Seventh Circuit in regarding Jorn and Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), as requiring a completely compelling showing of a "no alternate" situation before a trial judge could abort a criminal trial over a defendant's objection, thereby removing the defendant's option to have his fate decided by the first jury selected. The Somerville majority opinion, however, apparently regards Jorn as deceptive in language when its peculiar facts are considered. In the course of the Somerville majority opinion, the following statement is made: "In Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), a trial judge dismissed the jury, over defendant's objection, because one of the jurors had been acquainted with the defendant, and therefore was probably prejudiced against the Government; this Court held that the trial judge properly exercised his power 'to prevent the defeat of the ends of justice.' "

In the dissent of Mr. Justice Marshall in Somerville, he remarks that, in his view, "manifest necessity" cannot be created by error on the part of the prosecutor or judge; it must arise from some source outside their control. He cites the Simmons case as an instance where a juror prevented the trial from proceeding to verdict. Thus, apparently, he read the holding of the Simmons case to the same effect as does the majority and to that extent concurs that in such instance the trial judge may sua sponte grant a mistrial and the defendant's subsequent plea of double jeopardy cannot prevail. Whether we agree with that construction of the Simmons case when read in the light of its peculiar facts is irrelevant.

Our state rule concerning double jeopardy requires the existence of manifest necessity before the trial judge may abort a trial over the defendant's objection without implicating a subsequent plea of double jeopardy on reprosecution for the same offense. We have recognized that the federal authority is paramount. The federal authority now appears to clearly be that a trial judge over the defendant's objection may declare a mistrial because one of the jurors was "acquainted with the defendant, and therefore probably prejudiced against the Government." Such action by the trial judge is a proper exercise of "power to prevent the defeat of the ends of justice"; therefore, a "manifest necessity" existed. In such instance, "the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice."

We are, therefore, constrained to hold that Stewart's plea of double jeopardy was not sustainable and the trial court properly overruled it.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.