COMMONWEALTH of Kentucky, Appellant,

v.

Lashawndrick Demans SCOTT, Appellee.

No. 98–SC–0764–DG.

Supreme Court of Kentucky.

Feb. 24, 2000.

Albert B. Chandler III, Attorney General of Kentucky, Dana M. Todd, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellant.

Daniel C. Hicks, Katherine Hicks Demps, Hicks & Demps, Hopkinsville, for appellee.

LAMBERT, Chief Justice.

After jeopardy has attached in a criminal trial, a mistrial may not be declared unless there is a manifest necessity. For reasons of perceived hostility from a juror, the Commonwealth sought and was granted a mistrial. The Court of Appeals reversed the subsequent conviction on former jeopardy grounds, and the Commonwealth sought review in this Court, contending that the manifest necessity standard has been met, and that the Court of Appeals' conclusion to the contrary was erroneous.

The issue here arose as follows. At Lashawndrick Scott's first trial, during Officer Sparks' testimony, the prosecutor moved to admit into evidence a BB pistol (not the murder weapon) that was a replica of a .357 Magnum handgun. The prosecutor handed the BB pistol, enclosed in a plastic bag, to a juror and the following exchange occurred:

**Judge:** Is it unloaded?

**Jury:** [Laughter]

**Juror B.:** He dudn't (sic) know.

**Prosecutor:** It's a BB pistol.

**Juror B.:** Unload it anyway, it's hard on the eyes.

The prosecutor then gave the BB pistol to Officer Sparks, who examined the pistol and found that it was loaded. Officer Sparks unloaded the pistol and gave it back to the prosecutor.

The following conversation ensued:

**Prosecutor:** Do you know something about guns? If you do, you might want to look at it and see . . .

**Juror B.:** I don't know about BB pistols, but I know enough about guns to check it and make sure it's empty before you start passing them around.

**Prosecutor:** You're right about that. I shouldn't have done that but I thought it was . . . (inaudible). At any rate, would you all like to see it? [Silence]

**Female Juror:** I would.

The prosecutor continued questioning Officer Sparks until court was adjourned for a lunch break.

After the lunch break, the prosecutor moved for a mistrial, claiming that the Commonwealth could not receive a fundamentally fair trial due to Juror B's hostility. Defense counsel noted his objection to a mistrial. Although the defense counsel had missed some of the conversation between the prosecutor and Juror B., he did not think that the statements at issue necessarily reflected a prejudicial attitude. The trial judge acknowledged that he, too, did not hear the whole conversation between Juror B. and the prosecutor.

Both the prosecutor and the defense counsel objected to various remedies that were proposed. The prosecutor objected to individual *voir dire* of Juror B. and to admonishing him, contending that to do so would make matters worse for the Commonwealth's case. Defense counsel added that an admonishment to the entire jury might be an overreaction. The trial judge decided that there was no appropriate way to question Juror B. about his statements. Thus, over defense counsel's objection, the trial court granted the motion for a mistrial.

The Commonwealth later proceeded to re-try Scott. Scott's counsel then filed a "Motion to Bar Re-trial and Enter Judgment of Acquittal." In the order denying this motion, the trial court explained its reasons for the mistrial. Juror B., the trial court explained, was "unnecessarily hostile" towards the prosecutor. Furthermore, Juror B.'s comments, some of which were unsolicited, shed a "disparaging light" on the prosecutor and made him "look stupid." The jury's laughter, the trial court concluded, showed that Juror B. influenced the entire jury panel. Thus, there was "no other recourse but to terminate the proceedings."

The case proceeded to trial. Scott was found guilty of second degree manslaughter and sentenced to ten years imprisonment. He appealed based upon double jeopardy grounds. The Court of Appeals vacated the judgment, holding that the prosecutor failed to demonstrate the high degree of necessity required for granting a mistrial. Furthermore, the Court of Appeals stated, the mistrial merely provided the Commonwealth "a more favorable opportunity to convict the appellant." For the following reasons, we affirm.

■ The Fifth Amendment of the Constitution of the United States and Section 13 of the Constitution of Kentucky guarantee that no person shall be tried twice for the same offense.[1] However, the principle of double jeopardy does not prevent re-trial if the proceedings are terminated because "[t]he trial court, in exercise of its discretion finds that the termination is manifestly necessary ."[2] As stated, a finding of manifest necessity is a matter left to the sound discretion of the trial court.[3] Thus, a trial court's grant of a mistrial will be overturned only if it is clearly erroneous or constitutes an abuse of discretion.[4]

■ Manifest necessity has been described as an "urgent or real necessity."[5] The propriety of granting a mistrial is determined on a case by case basis.[6] A classic situation in which a mistrial is manifestly necessary is when jurors are unable to agree on a verdict.[7] For example, in *Nichols v. Commonwealth*, the defendant was found guilty of murder at a second trial after his first trial resulted in a hung jury. On appeal, the defendant argued that the mistrial was not necessary because his motion for a directed verdict should have been granted at the first trial. This Court held that since there was evidence at the first trial sufficient to overcome the defendant's motion for a directed verdict, there was a necessity for a mistrial due to the inability of the jurors to agree on a verdict.[8]

Another example of the high degree of necessity required for a mistrial occurred in *Stewart v. Commonwealth*.[9] In this case, after the prosecutor had made an opening statement and presented some evidence, it was discovered that one of the jurors was married to the defendant's first

1. *Tinsley v. Jackson*, Ky., 771 S.W.2d 331, 331 (1989); *Leibson v. Taylor*, Ky., 721 S.W.2d 690, 693 (1987) (overruled on other grounds, 815 S.W.2d 402, 404 (1991)).

2. KRS 505.030(4)(b); *Grimes v. McAnulty*, Ky., 957 S.W.2d 223, 224 (1998); *Nichols v. Commonwealth*, Ky., 657 S.W.2d 932, 933 (1983).

3. *Grimes*, 957 S.W.2d at 225.

4. *Tinsley* at 332.

5. *Miller v. Commonwealth*, Ky., 925 S.W.2d 449, 453 (1995).

6. *Stewart v. Commonwealth*, Ky., 497 S.W.2d 226, 227 (1973) (*citing Mullins v. Commonwealth*, 258 Ky. 529, 80 S.W.2d 606 (1935)).

7. *Nichols*, 657 S.W.2d at 933 (*citing Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)), *Commonwealth v. Crooks*, Ky., 655 S.W.2d 475 (1983), *Jones v. Hogg*, Ky., 639 S.W.2d 543 (1982), *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977), *Cornwell v. Commonwealth*, Ky., 523 S.W.2d 224 (1975).

8. *Nichols*, 657 S.W.2d at 934.

9. 497 S.W.2d 226, 228 (1973).

cousin. When the juror was asked at a hearing in chambers why he had not previously disclosed the existence of his relationship with the defendant, he replied that he was " 'kind of dumb on this.' " [10] The jury was dismissed, and the case retried. On appeal, this Court's predecessor relied upon federal authority holding that a trial judge may declare a mistrial over a defendants objection if one of the jurors is acquainted with the defendant and thus probably prejudiced against the government. In holding that the mistrial was necessary, the court reiterated that the defendant's interest in seeing the first trial through to a verdict was outweighed by " 'the competing and equally legitimate demand for public justice.' " [11]

■ In the case at bar, the high degree of necessity required for granting a mistrial was not demonstrated by Juror B.'s perceived hostility toward the prosecutor. During the course of a trial, there are numerous moments when even the most seasoned attorney may be made to feel foolish or inept due to an unexpected turn of events. Such an unanticipated occurrence came about here when the prosecutor attempted to hand the jury a gun, albeit a BB gun, without knowing whether it was loaded. The record does not indicate, however, that this event would have prevented the Commonwealth from receiving a fundamentally fair trial.

The trial court should not have assumed that because Juror B. objected to being handed a loaded gun that he was prejudiced against the Commonwealth. There was no effort made to question Juror B. regarding his ability to judge the evidence in a fair and impartial manner. Had there been such an effort, Juror B.'s prejudice or lack thereof would have been documented. The trial court believed that the laughter from the other jurors indicated that Juror B.'s hostility had infected the jury. There

is nothing in the record, however, indicating that the jurors were biased against the Commonwealth or were unable to assess the evidence in an impartial manner. Moreover, although the trial court determined that other potential remedies were inadequate, in the face of a mistrial and the potential for a bar to re-trial, other remedies should have been pursued.

■ Although a trial court is vested with discretion in granting a mistrial, the power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes.[12]

For the foregoing reasons, the judgment of the Court of Appeals is affirmed, and the judgment of the Christian Circuit Court is hereby vacated.

COOPER, KELLER and STUMBO, JJ., concur.

GRAVES, J., dissents by separate opinion in which JOHNSTONE and WINTERSHEIMER, JJ., join.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

The majority has in effect found that the trial court abused its discretion in declaring a mistrial. After hearing arguments, the trial judge, who was present and observed the demeanor of Juror B, made a reasoned decision to grant a mistrial because Juror B initiated a colloquy that proved to be "unnecessarily hostile" towards the prosecutor. In addition to hearing the answers, it was the trial judge, and not this reviewing Court, who was present and able to observe body language, eye contact, hand movements and vocal inflection of Juror B.

Jurors briefly assume the most powerful position in America. Jurors can ignore the law completely. Even if everyone

10. *Id.* at 226.

11. *Id.* at 228.

12. *Glover v. McMackin,* 950 F.2d 1236, 1240 (*quoting United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824)).

agrees on the facts and the law is clear that the defendant is guilty on those facts, the jury may still acquit the defendant. A jury in a criminal case may do pretty much as it pleases when it comes to acquitting a defendant or convicting a defendant of a lesser charge. This tremendous power makes the modern Anglo–American jury system unique.

The jury is a microcosm of the outside world. It was designed to bring the conscience of the community into the court system. The nature of the kinship between democracy and trial by jury was pinpointed some years ago by Patrick Devlin, a British Justice and jury scholar, who commented, "In a democracy, law is made by the will of the people and obedience is given to it not primarily out of fear but from goodwill." "A jury is a means by which the people play a great part in the application of the law." Jurors form their views based on their own experience. That is the basis for how they will weigh and consider the evidence.

It is not enough for the jury system to look marvelous in theory, it has to work day after day in case after case. Here, Juror B demonstrated a hostility that indicated a lack of credibility in the prosecutor. Egregious verdicts and hung juries occur when there is a hostile juror who votes on the basis of special interests rather than on the merits of the evidence. Here, Juror B manifested a special interest in ridiculing the prosecutor. Because the trial judge was convinced that the conduct of Juror B lacked sufficient judiciousness in order to give a fair trial, it was certainly within the legitimate discretion of the trial judge to take corrective action by declaring a mistrial.

JOHNSTONE and WINTERSHEIMER, J.J., join in this dissent.