**James Darnell GRAVES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2008–SC–000580–MR.**

Supreme Court of Kentucky.

June 25, 2009.

Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellant.

Jack Conway, Attorney General, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for Appellee.

Opinion of the Court by Justice
NOBLE.

At a jury trial, Appellant James Darnell Graves was convicted of third-degree burglary, possession of burglary tools, and being a persistent felony offender in the first degree. His five-year sentence for third-degree burglary was enhanced to twenty years' imprisonment under the persistent felony offender statute, and was run concurrently with his sentence of thirty days for possession of burglar's tools. On this matter of right appeal, Ky. Const.

§ 110(2)(b), Appellant argues that the trial court should have granted a mistrial during *voir dire* when the prosecution described its witness as having no motive and being neutral. He also argues that the trial court should have granted a directed verdict regarding his possession of burglary tools. Finding Appellant's arguments unpersuasive, the trial court is affirmed.

## I. Background

Appellant and Gary Smith were arrested within a few feet of the Backspin Sports Bar on North Limestone Street in Lexington soon after it was broken into in December 2007. One of the co-owners, Johnny Mitchell, testified that the door, pool tables, storage cabinets, and the cash register drawer were damaged. Several latches secured by padlocks on metal liquor cabinets storing alcohol had been pried off, and a display of Black and Mild cigars had been knocked over.

Smith admitted that he broke into the bar and entered a guilty plea to third-degree burglary. Appellant claims that he had been working on his uncle's truck when he ran into Smith, and that he was merely taking Smith where he could sell the stolen goods.

When Smith was arrested near the bar, he was carrying two bottles of Grey Goose vodka, Black and Mild cigars, and two pocket knives. When Appellant was arrested, he was carrying a bottle of Grey Goose vodka, seven packets of Black and Mild cigars, a flathead screwdriver, and a pocket knife. Mitchell testified that among the items missing after the burglary were four bottles of Grey Goose vodka and Black and Mild cigars.

Ronald Estill was an eyewitness to the burglary. He called 911 from a payphone and provided a description of the two men he watched through the front glass for fifteen to twenty minutes. He described one of the men as wearing blue jeans, a shirt, and a baseball cap, and the other as wearing a jacket with a hoodie. He said he saw both men carrying liquor, and that he was sure Appellant was one of them. Estill testified that he knew Mitchell, had previously done work on the bar, that he had been there before, and that he had seen both of the burglars together before and knew their names. Though he incorrectly identified Smith as "Martin," he correctly identified Appellant. He also said he knew Appellant's family.

Appellant was convicted and sentenced to twenty years in prison.

## II. Analysis

### A. Failure to Grant Mistrial after Prosecutor's *Voir Dire* Bolstering of Commonwealth's Witness

Appellant first claims that the trial court erred when it failed to grant a mistrial during *voir dire* when the Commonwealth described its witness as having no motive and being neutral. The Commonwealth first told the jury that the co-defendant, Smith, had already had his day in court,[1] but that they may or may not find out what happened in his case. The Commonwealth then told the jury that it was their job to determine credibility. In reference to Smith's testimony, the Commonwealth asked the jury if it could "think of a reason someone might lie for someone else, take the blame for someone else, cover up for someone else." The Commonwealth then said, "Well, there's such an individual today, and then there is an individual who is neutral. And that neutral individual is Mr. Ronald Estill." The defense objected and moved for a mistrial. At a bench conference, the Commonwealth agreed to correct

---

1. Smith had already pled guilty to third-degree burglary.

any error. The court sustained the objection, but overruled the motion for a mistrial. No admonition or further relief was requested. However, the Commonwealth then offered to "clarify" by instructing the jury that it was their job to determine credibility and who had the motivation to lie. The defense responded, "Okay, as long as he clarifies," and the Commonwealth informed the jury accordingly.

■■ "A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky.2005). A manifest necessity is an " 'urgent or real necessity' " that is "determined on a case by case basis." *Commonwealth v. Scott*, 12 S.W.3d 682, 684 (Ky.2000) (quoting *Miller v. Commonwealth*, 925 S.W.2d 449, 453 (Ky. 1996)). A hung jury is a classic example of a manifest necessity requiring a mistrial. *Id.* However, " '[i]n some cases the declaration of a mistrial by a presiding judge when there was no manifest necessity to do so will prevent retrial.' " *Radford v. Lovelace*, 212 S.W.3d 72, 79 (Ky.2006) (quoting *Nichols v. Commonwealth*, 657 S.W.2d 932, 933 (Ky.1983)).

■■ "When deciding whether there is manifest necessity to declare a mistrial, we must look to see if either parties' right to a fair trial has been infringed upon." *Radford*, 212 S.W.3d at 80. To do this, "the court must always assess if the parties' 'interest in seeing the first trial through to a verdict [is] outweighed by competing and equally legitimate demand for [protection of the parties' rights and] public justice.' " *Id.* (quoting *Scott*, 12 S.W.3d at 685). Specifically, "the decision should be based on whether the complained of 'event . . . prevented the [party] from receiving a fundamentally fair trial.' " *Id.* (quoting *Scott*, 12 S.W.3d at 685).

■■ "The standard for reviewing the denial of a mistrial is abuse of discretion." *Bray v. Commonwealth*, 68 S.W.3d 375 (Ky.2002). Here, defense counsel agreed that the Commonwealth could "clarify" any potential bolstering issue by telling the jury that they would determine credibility and motivation. Additionally, the Commonwealth's bolstering was not during its case in chief while Estill was on the stand; it was during *voir dire*. No admonition was requested. Even though it was improper bolstering, it was not an "error 'of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by grant of a mistrial].' " *Bray*, 177 S.W.3d at 752 (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky.1996)). Therefore, the trial court did not abuse its discretion in failing to declare a mistrial.

## B. Failure to Grant Directed Verdict for Possession of Burglary Tools

■ Appellant also argues that the trial court committed error when it failed to direct a verdict in his favor regarding possession of burglary tools because there was insufficient proof that his screwdriver was used in the burglary; knives were also recovered from Smith; and there was no evidence as to what tool was used. However, there was evidence that the bar was broken into, and the bar's co-owner testified that the door, pool tables, storage cabinets, and the cash register drawer were damaged. Latches secured by padlocks on the metal liquor cabinets had been pried off. The evidence was sufficient for the jury to infer that Appellant's screwdriver was intended for his use in the burglary, or that he had knowledge that it was intended to be used by Smith for this purpose.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991), sets out the test for a directed verdict as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

A person is in possession of burglar's tools when

> ... he possesses any tool, instrument or other thing adapted, designed or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking under circumstances which leave no reasonable doubt as to his:
>
> (a) Intention to use the same in the commission of an offense of such character; or
>
> (b) Knowledge that some other person intends to use the same in the commission of an offense of such character.

KRS 511.050(1).

Here, Appellant did not dispute that his co-defendant, Smith, was in possession of burglary tools, but he denied that he had participated in the burglary. Appellant argues that even though he was apprehended near the scene of the burglary with stolen goods and a screwdriver, there was merely a possible inference that the screwdriver used was a burglary tool, and that this conviction therefore fails the *Sawhill* scintilla of evidence test. *See Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

Even-though it was before the current statute, Kentucky's highest court long ago persuasively addressed the argument raised by Appellant:

> the tools or implements and other things in the possession of the defendant, in this character of prosecution, need not be articles especially manufactured and designed for the use of burglars alone, but they may be any tools, implements, or things which in the language of the statute are "used by burglars for housebreaking, forcing doors, windows, locks, or buildings," etc., although they may be such as are adapted for use in the accomplishment of lawful and legitimate purposes. If the language of the statute should be construed so as to require that such tools, etc., should be specially manufactured and designed for burglarious purposes, we doubt if any defendant could ever be convicted under the statute, not only because, as we surmise, that there is no such manufacturing establishment, but also because of the great difficulty which the commonwealth would encounter in proving that fact, to say nothing about the strained construction of the statute which that interpretation would require. If the tools are such that they may be used to commit burglary, and the circumstances be such as to lead a reasonably prudent man to believe beyond doubt that the intention of their possessor was to use them for that purpose, the offense is complete. We feel that this interpretation of the statute is so plain as to need no fortification of authorities. But all the courts before

which the question has been presented, so far as we are able to learn, have adopted the same view. . . .

*Commonwealth v. Riley,* 192 Ky. 153, 232 S.W. 630, 632–33 (1921); *see also* KRS 511.050 cmt ("Substantial difficulty exists with this element because tools or instruments used by burglars are not peculiarly designed for that purpose. To minimize this difficulty, KRS 511.050 describes the items as things that are 'adapted, designed or commonly used' for purposes of forcible takings and intrusions. With this description, it should be obvious that almost all burglar tools will have a legitimate, non-criminal purpose. (This means that the offense has some inherent danger for innocent persons.) That danger is minimized by the third element. Once possession of such instruments is shown, conviction is appropriate only after proof of the existence of circumstances which leave no reasonable doubt as to the possessor's criminal intention or knowledge of another's intent.").

 Given that when Appellant was apprehended near the bar he was in possession of stolen goods, that numerous parts of the bar had been damaged and pried open, and that he was in possession of a screwdriver, there was more than a mere scintilla of evidence that he had used the screwdriver as a burglar's tool. "[F]acts may be established by circumstantial evidence." *Gregory v. Commonwealth,* 610 S.W.2d 598, 599 (Ky.1980); *Goss v. Personnel Bd.,* 456 S.W.2d 824, 826 (Ky.1970); *see also Little v. Commonwealth,* 438 S.W.2d 527, 530 (Ky.1968) ("We have held many times that a criminal conviction may be sustained on the basis of circumstantial evidence."). "[A]n inference from circumstantial evidence is a conclusion drawn on the basis of probabilities." *Goss,* 456 S.W.2d at 826. "[A]n inference from circumstantial evidence

may vary in strength according to the degree of probability reflected by it, being strong enough in one case to require a directed verdict while in another case having only enough strength to create a jury issue." *Id.*

Given the evidence against Appellant in this case (far more than a mere scintilla of evidence under *Sawhill*), the question of whether he was in possession of burglar's tools was a question for the jury, and it found that he was. Additionally, Appellant admits in his brief that he "was taking Smith where he could sell the stolen goods," and the jury could also have inferred that he had knowledge that Smith (who pled guilty to the burglary) intended to use the screwdriver in the burglary, in which case Appellant was also guilty of possessing burglar's tools under KRS 511.050. Therefore, "under the evidence as a whole," it was not "clearly unreasonable for a jury to find guilt," and Appellant was not "entitled to a directed verdict of acquittal" regarding possession of burglar's tools. *Benham,* 816 S.W.2d at 187.

### III. Conclusion

Even though the Commonwealth improperly bolstered its witness's credibility during *voir dire* and the trial court properly sustained Appellant's objection, it did not abuse its discretion in overruling his motion for a mistrial. Appellant did not ask for any further relief and he agreed to let the Commonwealth cure the error by instructing the jury that its job was to determine credibility and motive. Additionally, there was ample evidence that he possessed burglar's tools that he intended to use in the burglary, or that he knew that his co-defendant would use them in the burglary. Under these facts, the trial court did not err in failing to direct a verdict regarding possession of burglar's tools.

For the foregoing reasons, Appellant's conviction and the judgment of the Fayette Circuit Court is affirmed.

All sitting. All concur.