David **QUIST**, Appellant,

v.

**COMMONWEALTH of Kentucky**, Appellee.

No. 2008–CA–001031–MR.

Court of Appeals of Kentucky.

May 21, 2010.

Discretionary Review Denied by Supreme Court June 8, 2011.

Harry P. Hellings, Jr., Covington, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.

Before VANMETER, Acting Chief Judge; LAMBERT, Judge; HARRIS,[1] Senior Judge.

## OPINION

VANMETER, Acting Chief Judge.

David Quist appeals from the final judgment of the Campbell Circuit Court sentencing him to ten years' imprisonment for attempted unlawful transaction with a minor in the first degree (attempted UTM 1st). For the following reasons, we affirm.

In March 2007, Quist, a 46–year–old man, began "chatting" on the internet with screen name "want_2_be_me13," whose profile identified her as a 13–year–old girl. In actuality, "want_2_be_me13" was a fictitious person who had been created by volunteers of Perverted Justice, a not-for-profit organization which collaborates with law enforcement to catch internet child-predators. When the volunteers entered a Yahoo Chat room under the screen name "want_2_be_me13," her profile was visible for others in the chat room to view before contacting her.

Quist contacted "want_2_be_me13" and began a course of online conversations with her, some of which were sexually

explicit in nature. Eventually, they scheduled to meet on April 12, 2007. On that day, Quist drove to what he believed to be the residence of "want_2_be_me13," yet instead arrived at a sting house where law enforcement was waiting for him. Quist was arrested and, following a jury trial, was convicted of attempted UTM 1st. This appeal followed.

## I. Routine booking question

■ Quist claims that the trial court erred by denying his motion to suppress certain statements made by him, on the ground that said statements were procured in violation of his *Miranda* rights. We disagree.

Our review of the trial court's decision on a motion to suppress "requires that we first determine whether the trial court's findings of fact are supported by substantial evidence." *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002). "If they are, then they are conclusive." *Id.* (citing RCr[2] 9.78). "Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law." 84 S.W.3d at 923 (citing *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998); *Commonwealth v. Opell*, 3 S.W.3d 747, 751 (Ky.App.1999)).

In this case, Quist sought to suppress his statements "I was wrong, I know I was wrong" made to an agent at the police department following his arrest. Quist acknowledges that he was informed of his *Miranda* rights prior to being questioned by the agent, yet claims that his state-

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Kentucky Rules of Criminal Procedure.

ments were made after he requested an attorney and before the attorney arrived.

■ The Kentucky Supreme Court has held that "[i]f at any time during a police interrogation the suspect has 'clearly asserted' his right to counsel, the interrogation must cease until an attorney is present." *Dixon v. Commonwealth,* 149 S.W.3d 426, 431 (Ky.2004) (quoting *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)). *See also Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966). In *Dixon,* the Court held that the defendant's rights under *Edwards* and *Miranda* were not violated when, after the defendant had invoked his right to counsel, the Commonwealth elicited information from him that he was unemployed and then used that information against him at trial. 149 S.W.3d at 431. The Court reasoned that inquiries about the defendant's employment status were permissible under the "routine booking question exception" to *Miranda. Id.* at 432.

In this case, the agent who questioned Quist testified that his job was to process defendants as they were brought into the police department and that his intent in questioning Quist was to obtain biographical information. He further testified that Quist's statements were made spontaneously and not in response to any of his questions. The trial court determined that the agent's questions were for routine booking purposes and not for the purpose of inducing Quist to say something incriminating. Our review of the record discloses that the court's findings of fact are supported by substantial evidence and that the court properly applied the "routine booking question exception" in this instance.

## II. Confrontation clause

■ Quist argues that the trial court erred by admitting the testimony of his daughter via web camera, in violation of the confrontation clause. Even though an error may have occurred, such error was harmless.

■ Under the Sixth Amendment to the United States Constitution, "a criminal defendant has the right 'to be confronted with the witnesses against him.'" *Sparkman v. Commonwealth,* 250 S.W.3d 667, 669 (Ky.2008). "Similarly, the Kentucky Constitution, in section 11, states that the accused has the right 'to meet witnesses face to face.'" *Id.* "Although the language of the two constitutional confrontation clauses is different, [the Kentucky Supreme] Court has held that the underlying right is 'basically the same.'" *Id.* (quoting *Commonwealth v. Willis,* 716 S.W.2d 224, 227 (Ky.1986)).

■ Confrontation clause errors are subject to a harmless error standard of review. *Heard v. Commonwealth,* 217 S.W.3d 240, 244 (Ky.2007). "[B]efore a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* (quoting *Barth v. Commonwealth,* 80 S.W.3d 390, 395 (Ky.2001) (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967))).

In this case, Quist's daughter testified at trial via web camera from her mother's residence in Australia.[3] Though the trial court required that Quist's ex-wife and her husband vacate the residence during the daughter's testimony, Quist maintains that

3. Evidently, the daughter was present prior to and at the time of Quist's arrest, and thereafter went to live with her mother in Australia.

no safeguards were in place to ensure that they actually left and were not present to coach or lead his daughter through her testimony. He claims that the animosity between himself and his ex-wife, who was present in the room with their daughter prior to her testifying, causes him grave concern as to the possibility of bias or coercion of his daughter's testimony.

However, the record reflects that the daughter's testimony included little, if any, inculpatory evidence. She testified that after Quist left their house the night of his arrest, she went to bed around 11 p.m. and was awakened around 2 a.m. by police pounding at the door. She testified that the next time she saw Quist, he kept telling her how sorry he was. She further testified that Quist told her that the police and news had said bad things about him, but not to believe it, and that he only went to wherever that girl's house was to give her food because she was starving. This testimony aside, our evaluation of the remaining evidence reveals that, beyond a reasonable doubt, a conviction would have ensued. Thus, any error which might have occurred in admitting her testimony was harmless.

### III. Mistrial

Quist claims that the trial court abused its discretion by denying his motion for a mistrial after the Commonwealth improperly introduced "state of mind" testimony. We disagree.

■■■ Quist moved for a mistrial after one of the arresting officers testified that Quist was stopped in his vehicle outside of the sting house and "seen us coming at him." The court denied his motion, but admonished the jury to disregard the officer's statement. Quist asserts that the officer's testimony was not premised on a factual basis, since Quist's state of mind

was never communicated to the officer, and was "highly prejudicial."

A mistrial is unwarranted absent a "manifest" or "real necessity" for such an extraordinary remedy. This high standard results from the presumption that an admonition "can cure a defect in testimony." The presumption is overcome in only two situations: (1) when an overwhelming probability exists that the jury is incapable of following the admonition *and* a strong likelihood exists that the impermissible evidence would be devastating to the defendant; or (2) when the question was not premised on a factual basis *and* "was 'inflammatory' or 'highly prejudicial.' "
*Sherroan v. Commonwealth,* 142 S.W.3d 7, 17 (Ky.2004) (internal citations omitted). "The standard for reviewing the denial of a mistrial is abuse of discretion." *Graves v. Commonwealth,* 285 S.W.3d 734, 737 (Ky. 2009) (quoting *Bray v. Commonwealth,* 68 S.W.3d 375 (Ky.2002)).

In this case, the officer's testimony was not "inflammatory" or "highly prejudicial" and any prejudice which may have resulted was removed by the court's admonition. Quist has failed to overcome the presumption that the admonition cured any prejudice. Accordingly, the court did not abuse its discretion by denying his motion for a mistrial.

■■■ Later, the same officer testified that as he approached Quist's vehicle outside the sting house, it "sped off in a manner to where, in [his] experience with narcotics, it was speeding." Again, Quist moved for a mistrial, arguing that the officer's testimony as to his state of mind, i.e., his recognition of the officer as law enforcement caused him to flee, was "highly prejudicial." The court denied his motion and held that the jury is to determine, based on lay witness testimony, whether or not Quist was speeding.

The Commonwealth maintains that the officer's testimony was admissible as a lay witness estimate on the speed of the vehicle, based on his personal observations. *See Clement Bros. Const. Co. v. Moore,* 314 S.W.2d 526, 530 (Ky.1958) (a lay witness is permitted to testify as to the speed of a moving vehicle when estimate represents more than a "hazardous guess"); *Clifford v. Commonwealth,* 7 S.W.3d 371, 374 (Ky. 1999) (a nonexpert witness may express an opinion which is rationally based on the perception of the witness and helpful to a determination of a fact in issue); KRE [4] 701. Here, the officer's testimony was properly admitted as lay witness testimony and thus the court did not abuse its discretion by denying Quist's motion for a mistrial.

### IV. Impossibility defense

 Quist contends that the trial court erred by granting the Commonwealth's motion in limine to preclude him from raising "impossibility" as a defense. However, no citation to the record has been provided to us, as required pursuant to CR [5] 76.12(4)(c)(iv), to show that the court ever ruled on the Commonwealth's motion. Rather, our review of the record reveals that the court reserved ruling on the motion and never revisited the issue. Thus, we decline to address the merits of this claim of error since no formal ruling or order has been provided to us from which Quist is appealing.

### V. Directed verdict

Quist avers that the trial court erred by denying his motion for a directed verdict both at the close of the Commonwealth's case-in-chief and at the close of all the evidence. We disagree.

Upon consideration of a motion for a directed verdict,

the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (citations omitted).

 Quist moved for a directed verdict, first arguing that since no *actual* minor existed, a violation of KRS 530.064 was impossible. We disagree.

KRS 530.064(1) defines UTM 1st in pertinent part as follows:

(1) A person is guilty of [UTM 1st] when he or she knowingly induces, assists, or causes a minor to engage in:

(a) Illegal sexual activity[.]

Although KRS 530.064 requires the existence of an actual minor, the criminal attempt statute, KRS 506.010, under which Quist was convicted, has no such requirement. KRS 506.010 provides in relevant part:

(1) A person is guilty of criminal attempt to commit a crime when, acting with the kind of culpability otherwise

---

4. Kentucky Rules of Evidence.

5. Kentucky Rules of Civil Procedure.

required for commission of the crime, he:

 (a) Intentionally engages in conduct which would constitute the crime **if the attendant circumstances were as he believes them to be;** or

 (b) Intentionally does or omits to do anything which, **under the circumstances as he believes them to be,** is a substantial step in a course of conduct planned to culminate in his commission of the crime.

KRS 506.010(1) (emphasis added). In this case, evidence of the internet chats and telephone conversations between Quist and "want_2_be_me13" was sufficient for a jury to find, beyond a reasonable doubt, that Quist *believed* he was communicating with a 13–year–old girl, which is sufficient for purposes of KRS 506.010.[6]

█ Quist further interprets the language of KRS 530.064 that the defendant "induces, assists, or causes a minor to engage in" illegal sexual activity as requiring that the *minor* engage in illegal sexual activity. He argues that since the Commonwealth did not allege that "want_2_be_me13" committed an illegal act, a verdict should have been directed in his favor. However, Quist provides no authority for his interpretation of KRS 530.064. Although "illegal sexual activity" is not defined in KRS Chapter 510, clearly any sexual activity between a 46–year–old man and a 13–year–old girl would be illegal. *See, e.g., Young v. Commonwealth,* 968 S.W.2d 670, 673 (Ky.1998). Thus, Quist's argument is without merit.

█ Quist also moved for a directed verdict on the ground that insufficient evidence had been presented by the Commonwealth for a jury to ascertain his intent and whether he completed a substantial step in pursuing that intention on the night of his arrest. We note that the Commonwealth presented evidence of the sexually explicit chats Quist engaged in with "want_2_be_me13" including, but not limited to, statements such as "I want your virginity," "You're so sexy," "Wanna be my lover," "I bet you are full of passion dying to be expressed. I bet you would become a woman with me," and "I would touch you until ... you were craving so bad we would mate." Evidence was further presented that Quist drove to what he believed to be the residence of "want_2_be_me13" in order to meet her. Based on this evidence, it would not be clearly unreasonable for a jury to determine that Quist intended to engage in illegal sexual activities and completed a substantial step in pursuing that intention. *See Young,* 968 S.W.2d at 674 (whether a substantial step has been taken beyond a reasonable doubt is a question for the jury), *overruled on other grounds by Matthews v. Commonwealth,* 163 S.W.3d 11 (Ky.2005). Accordingly, the trial court did not err by denying Quist's motion for a directed verdict.

### VI. *Lesser-included offense*

█ Quist argues that the trial court erred by denying his motion to instruct the jury on criminal attempt to commit sexual

---

**6.** The Commentary to KRS 506.010, particularly the following example, suggests that the drafters did not intend "impossibility" as a defense to criminal attempt: "D believes that X is a juror and offers him a bribe. In fact X is not a juror. Because of subsection (1)(a), the impossibility of D completing the offense of bribing a juror is no defense to a charge of criminal attempt to commit that bribery. More typical of the conduct prohibited by this provision is an act of a potential thief in trying to steal a wallet from an empty coat pocket."

abuse in the second degree (attempted sexual abuse 2nd) as a lesser-included offense of attempted UTM 1st. We disagree.[7]

An instruction on a lesser-included offense is required "only if, considering the totality of the evidence, the jury could have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Baker v. Commonwealth,* 103 S.W.3d 90, 94 (Ky. 2003).

KRS 510.120 defines sexual abuse 2nd, as it existed at the time of the offense, in relevant part as follows: [8]

(1) A person is guilty of sexual abuse [2nd] when:

(b) He or she subjects another person who is less than fourteen (14) years old to sexual contact[.]

"Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party[.]" KRS 510.010(7). KRS Chapter 510 does not define "illegal sexual activity" for purposes of UTM 1st. Quist maintains that whether one is "attempting sexual contact" under KRS 510.120, or "attempting to induce sexual activity" under KRS 530.064, the statutory elements of the two crimes are generally the same and the jury could have made a reasonable inference from the evidence to find him guilty of sexual abuse 2nd, rather than UTM 1st.

Though no Kentucky authority has been provided to us establishing that the offense of sexual abuse 2nd is a lesser-included offense of UTM 1st, the Kentucky · Supreme Court has held that the offense of sexual abuse 1st is a lesser-included offense of UTM 1st if supported by the evidence. *See Combs v. Commonwealth,* 198 S.W.3d 574, 580 (Ky.2006). In *Combs,* the minor victim testified to incidents which constituted sexual abuse, but did not testify to having consented to, or participated in, the sexual activities. *Id.* at 578. The Court held that the only element distinguishing UTM 1st from sexual abuse 1st is "the victim's willing participation in the illegal conduct." *Id.* at 580.

In *Combs,* the "jury obviously did not believe that [the victim] was a willing participant" since the defendant was convicted of sexual abuse 1st, rather than UTM 1st. *Id.* The Court "note[d] in passing that logic supports the legislature's determination to assign a more severe penalty to a violation of KRS 530.064(1)(b) than to a violation of KRS 510.110(1)(b), thus concluding that it is more egregious to induce a child to willingly engage in illegal sexual activity than to subject an unwilling child to illegal sexual conduct." *Id.* at 578.

In this case, evidence was presented to show that "want_2_be_me13" willingly participated in the sexually explicit chats, as well as in scheduling to meet Quist, and conversing with him over the telephone. Evidence was further presented to suggest that Quist intended to induce "want_2_be_me13" to willingly engage in sexual activity. No evidence was presented · to show that Quist "subjected" "want_2_be_me13" to sexual touching without her consent. Thus, the evidence in this case did not support an instruction

---

**7.** Quist requested an instruction on attempted sexual abuse 1st *and* attempted sexual abuse 2nd at trial, but concedes on appeal that the trial court did not err by failing to instruct the jury on attempted sexual abuse 1st, since that offense applies to victims who are less than 12 years old and Quist believed "want_2_be_me13" to be 13 years old at the time of the offense.

**8.** KRS 510.120 underwent significant amendments in 2008.

on attempted sexual abuse 2nd as a lesser-included offense to attempted UTM 1st and the court did not err by declining to so instruct the jury.

### VII. Entrapment defense

██ Quist alleges that the trial court erred by denying his request to instruct the jury on entrapment as a defense. We disagree.

██ Entrapment is available as a defense to a crime

> if [the defendant] was induced or encouraged to engage in [the criminal] conduct by a public servant seeking to obtain evidence against him for the purpose of criminal prosecution, and the defendant was not otherwise disposed to engage in such conduct at the time of the inducement. Entitlement to the defense requires satisfaction of both prongs of the test, inducement and absence of predisposition.

*Morrow v. Commonwealth*, 286 S.W.3d 206, 209 (Ky.2009) (citations omitted).

The statute setting forth the defense of entrapment, KRS 505.010, provides in relevant part:

> (1) A person is not guilty of an offense arising out of proscribed conduct when:
>> (a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; and
>> (b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.
> (2) The relief afforded by subsection (1) is unavailable when:
>> (a) The public servant or the person acting in cooperation with a public

servant merely affords the defendant an opportunity to commit an offense[.]

In this case, evidence was presented to show that Quist made initial contact with "want_2_be_me13," whose profile identified her as 13 years-old, he initiated sexually explicit chats with her, he suggested meeting in-person, he spoke on the telephone with who he believed to be "want_2_be_me13," and he drove to what he believed to be her house to meet her. Though the record reflects that during a telephone conversation immediately prior to Quist's arrival at the house, "want_2_be_me13" invited him to come inside the house, as the trial court noted, at that point Quist was already on his way to her house and was calling to verify. The fact that "want_2_be_me13" invited him to come inside does not provide sufficient evidence of inducement or encouragement, in light of all the evidence, because going inside was not required to complete the crime. *See Young*, 968 S.W.2d at 674 (external conduct corroborates the defendant's intent to commit the crime, but the spoken word alone may constitute criminal conduct). Thus, the court did not err by denying Quist's request to instruct the jury on the defense of entrapment.

The judgment of the Campbell Circuit Court is affirmed.

ALL CONCUR.