**Benjamin William MEYER, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2011–CA–001622–MR.

Court of Appeals of Kentucky.

Feb. 22, 2013.

Richard M. Guarnieri, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Frankfort, KY, W. Bryan Jones, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, Chief Judge; KELLER and MOORE, Judges.

## OPINION

MOORE, Judge:

Benjamin William Meyer appeals the Fayette Circuit Court's judgment convicting him of two counts of receiving stolen property over $500.00; one count of possession of marijuana; and one count of possession of drug paraphernalia. After a careful review of the record, we affirm in part regarding the circuit court's denial of Meyer's motion for a directed verdict. We also reverse in part and remand regarding Meyer's remaining claims because the circuit court erred in declaring a mistrial as to counts three, four, and five during the first trial; and the evidence concerning counts three, four, and five should not have been heard by the second jury.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Meyer was indicted on six counts: Count one—receiving stolen property valued over $500.00, *i.e.*, a projector; count two—receiving stolen property valued over $500.00, *i.e.*, a projector; count three—receiving stolen property valued over $500.00, *i.e.*, a laptop computer; count four—possession of marijuana; count five—possession of drug paraphernalia; and count six—display or possession of a

cancelled/fictitious operator's license.[1]

Meyer's case proceeded to a jury trial. Following the presentation of evidence, and during jury deliberations, the jury sent the circuit court a note stating: "Jury cannot come to a unanimous verdict on Counts [sic] # 1[and] Count # 2." The note was signed by Juror # 4172, who was the foreperson of the jury.

During a discussion at the bench with counsel for both sides, the circuit court stated that it would not accept a partial verdict. The court subsequently asked the jury whether any of them thought further deliberations would be helpful in reaching a verdict, to which they responded in the negative. The court decided not to give the jury an instruction concerning the desirability of reaching a verdict, pursuant to RCr[2] 9.57, and the court then declared a mistrial. The circuit court entered an order stating that the jury had been "unable to agree upon a verdict, [so] they were discharged from further consideration of this case and a Mis-trial [sic] was declared." The jury verdict form that is in the record provides no verdict as to counts one and two, both of which allege that Meyer received stolen property valued at $500.00 or more (i.e., two projectors). However, the jury verdict form provides that the jury reached verdicts as to count three (not guilty on charge of receiving stolen property valued at $500.00 or more, i.e., a laptop computer); count four (guilty on charge of possession of marijuana); and count five (guilty on charge of use or possession of drug paraphernalia). The jury's verdicts for counts three, four, and five were signed by the jury foreperson.

Prior to the second trial, Meyer filed a motion to dismiss count three of the indict-ment. Meyer argued that during the first trial, the jury foreperson had reported to the court that the jury had reached a "not guilty" verdict on count three, but because the jury was unable to reach a unanimous verdict on all counts, the court had declared a mistrial. Meyer contended that to be tried again on count three after the first jury had reached a "not guilty" verdict on that count would violate his right against double jeopardy. The circuit court held a hearing on the motion and denied it orally on the record, reasoning that the court did not believe it was permitted to take a partial jury verdict.

During the second trial, Meyer moved for a mistrial on the ground that the jury in the first trial had unanimously voted "not guilty" on count three and "guilty" on counts four and five. Meyer argued that because: The jury had voted unanimously regarding counts three, four, and five; the decisions on those counts were signed by the jury foreperson; the circuit court clerk had file-stamped the partial jury verdict; and the clerk had entered the partial jury verdict into the record, there was previously a jury verdict on those three counts and, accordingly, Meyer was prejudiced by the introduction of evidence at his second trial concerning the three counts. The circuit court denied the motion, reasoning that during the first trial, the court had released the jury to leave without taking an "official" return of the jury's verdict on counts three, four, and five, and that at the time the court had done so, the court was unaware that the jury had voted "not guilty" on count three.

At the end of the second trial, the jury returned a verdict of "guilty" on counts

---

1. Count six charging Meyer with display/possession of a cancelled/fictitious operator's license was subsequently dismissed on the Commonwealth's own motion.

2. Kentucky Rules of Criminal Procedure.

one, two, four, and five, and a verdict of "not guilty" on count three. The jury recommended sentences for the counts on which it had convicted Meyer, and the circuit court sentenced Meyer to: One and one-half years of imprisonment on count one; one and one-half years of imprisonment on count two; six months of imprisonment and a $100.00 fine on count four; and six months of imprisonment and a $100.00 fine on count five. The sentences for counts one and two were ordered to be served consecutively, and the sentences for counts four and five were ordered to be served concurrently with each other and concurrently with count one, for a total sentence of three years of imprisonment. The court ordered the judgment to be withheld, and sentenced Meyer to five years of probation, contingent upon Meyer's meeting certain conditions specified in the written judgment. The circuit court's judgment also provided that count six was dismissed.

Meyer now appeals, contending that: (a) the second jury trial of counts three, four, and five violated his right against double jeopardy; (b) the introduction of evidence during the second trial concerning counts three, four, and five was prejudicial to Meyer; and (c) the circuit court should have granted a directed verdict as to the felony versions of counts one and two because the Commonwealth failed to prove that the value of each projector was at least $500.00.

## II. ANALYSIS

### A. DOUBLE JEOPARDY

Meyer first alleges that the second jury trial of counts three, four, and five violated his right against double jeopardy. The Commonwealth argues that Meyer consented to the mistrial and, accordingly, he cannot now claim that his right against double jeopardy was violated by his retrial.

Under both the United States and Kentucky Constitutions, jeopardy attaches once a jury is impaneled and sworn. *See Cardine v. Commonwealth*, 283 S.W.3d 641, 646–47 (Ky.2009). Thus, both constitutions "guarantee that no person shall be tried twice for the same offense." *Commonwealth v. Scott*, 12 S.W.3d 682, 684 (Ky.2000) (citations omitted). "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury or contemporaneously-impaneled alternates is barred unless 1) there is a 'manifest necessity' for a mistrial or 2) the defendant either requests or consents to a mistrial." *Cardine*, 283 S.W.3d at 647 (internal quotation marks and citation omitted). "Manifest necessity has been described as an urgent or real necessity. The propriety of granting a mistrial is determined on a case by case basis." *Scott*, 12 S.W.3d at 684 (internal quotation marks and footnote omitted). "A hung jury is a classic example of a manifest necessity requiring a mistrial." *Cardine*, 283 S.W.3d at 648. We review a circuit court's decision to grant a mistrial for an abuse of discretion. *See Cardine*, 283 S.W.3d at 647.

As previously noted, during Meyer's first trial, the jury sent the circuit court a note stating: "Jury cannot come to a unanimous verdict on Counts [sic] # 1[and] Count # 2." Upon review of the video recording of the first trial, it is apparent that after he saw the jury's note, defense counsel asked if the court would accept the verdict on one of the counts to "find out what they did [because] it might give [the court and the attorneys] some direction." Without responding, the court asked the Commonwealth if it wanted to make another plea offer based upon the contents of the jury's note. The Commonwealth responded that it had never withdrawn its

original offer of recommending a sentence of one year of imprisonment as to count one in exchange for Meyer's guilty plea and a dismissal of the remaining counts. The Commonwealth's attorney stated that she believed what the jury had likely done was find Meyer not guilty on count three and guilty on counts four and five because "[defense counsel] told them to find him guilty." The court agreed that that was the court's assumption, as well.

The circuit court again asked the Commonwealth if it wanted to make another plea offer, and the Commonwealth reiterated that its original offer still stood. The court surmised, however, that Meyer was not going to accept the original offer to plead guilty to the felony on count one when he had a hung jury on that count, and defense counsel agreed. Defense counsel said that Meyer would likely plead to count one if it was amended to a misdemeanor, but not if it remained as a felony charge. The attorney for the Commonwealth stated that, based upon her office's new policy, she could not amend the charge to a misdemeanor without first getting the approval to do so from other people in her office.

■ The court asked the Commonwealth's attorney if she wanted to call those people in her office to see if she could amend it to a misdemeanor before they brought the jury back in on the basis that the jury was hung and the court was about to declare a mistrial because the court was "not going to take a verdict on part of it."[3] The Commonwealth's attorney informed the court that it might help to know the count, as well, because "if it's 11–1 against me, then I'm going to be able to sell a misdemeanor to the people that I have to talk to," but "if it's 11–1 in my

favor, then [defense counsel] might want to consider the one year as opposed to retrying the thing. I don't know if we can send in a note to find that out before we bring them back?" The court responded in the negative.

The Commonwealth's attorney suggested the circuit court bring the jury back into the courtroom and declare a mistrial/hung jury without first charging the jury as set forth in RCr 9.57, then ask the jury what the count was for the sake of the parties' deliberations before a new trial date was set, *i.e.*, they could either enter a plea agreement or they could set a new trial date, depending on how the jury had voted. Defense counsel agreed to this plan without consulting with Meyer, who was not part of these discussions at the bench. The court also agreed, and followed through with that plan without discussing the matter with Meyer and without requiring defense counsel to consult with Meyer on the mistrial issue. After bringing the jury back into the courtroom and inquiring whether further deliberations might be useful in reaching a unanimous verdict, to which the jury replied in the negative, the circuit court declared a mistrial and dismissed the jury, but told the foreperson that the court wanted to ask him a few questions.

When the foreperson approached the bench to answer the court's questions, he brought with him the verdict form, which revealed there was no verdict reached on counts one and two, and that a unanimous verdict was reached on counts three, four, and five. The foreperson had even signed the jury's verdicts for counts three, four, and five. That partial jury verdict form was file-stamped and subsequently entered

---

3. It is not clear why the trial court thought it could not take a partial verdict. This is a proper course of action. *See generally, Com-* *monwealth v. Ray*, 982 S.W.2d 671 (Ky.App. 1998); *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).

into the record by the circuit court clerk, although the court orally informed the parties that it would not accept a partial jury verdict.

 Why the circuit court did not inquire about the jury's verdict concerning counts three, four, and five before declaring a mistrial and dismissing the jury is befuddling, because the jury's note to the court stating that it was unable to reach a unanimous verdict on counts one and two seems to imply that it *was* able to reach a unanimous verdict on counts three, four, and five. Although the circuit court did not take an "official" return of the jury's verdict in the first trial, the verdict for counts three, four, and five was signed by the foreperson and entered into the record by the circuit court clerk. Pursuant to the Kentucky Supreme Court's decision in *Holbrooks v. Commonwealth,* 85 S.W.3d 563, 567–68 (Ky.2002), this was sufficient to qualify as a return of the jury's verdict regarding guilt on counts three, four, and five.

Thus, the circuit court abused its discretion when it decided that it would not accept a partial jury verdict in this case concerning counts three, four, and five. Consequently, Meyer's retrial on those counts was improper and his retrial on count three, for which the first jury had found him "not guilty," placed him in double jeopardy. *See Commonwealth v. Ray,* 982 S.W.2d 671, 673 (Ky.App.1998) (finding that in instances when a jury reaches a partial verdict, the counts for which the jury did reach a verdict are final and may not be retried, but the counts for which the jury is hung may be retried ("A partial verdict where the jury finds guilt or innocence on one or more charges but is unable to reach a verdict on the remaining charges does not bar a retrial on the charges for which no verdict was rendered.")). *See also Wallace v. Havener,*

552 F.2d 721, 723–24 (6th Cir.1977) (stating that "[t]here is no acceptable reason why the state should have a second opportunity to convince a jury of facts necessary to secure a conviction of a crime," and that "[w]hen the jury hands down a partial verdict, a final judgment is rendered on the counts upon which the jury has reached agreement.").

 As previously noted, a court may *sua sponte* grant a mistrial, or do so on the Commonwealth's motion for a mistrial, but only if there exists a manifest necessity for doing so. Otherwise, the defendant must request or consent to the mistrial. In the present case, Meyer clearly did not request or consent to the mistrial, as he was not involved in the discussion about the hung jury, which occurred at the bench while "white noise" was playing in the courtroom, and his counsel did not have time to discuss the hung jury/mistrial with him before the court declared a mistrial. We are unaware of any precedent and, despite the Commonwealth's argument that Meyer had consented to the mistrial, the Commonwealth has failed to cite any precedent supporting the proposition that defense counsel may waive a defendant's constitutional rights without obtaining the defendant's consent to do so and without discussing the matter with the defendant.

Furthermore, Meyer did not consent to the mistrial and, in fact, he moved to dismiss count three prior to the second trial on the basis that the circuit court had improperly declared a mistrial on that count during the first trial because the jury had unanimously voted "not guilty" on that count. Meyer argued that a retrial on count three would violate his right against double jeopardy. Thus, he did not consent to the mistrial on count three.

Moreover, although the jury in the first trial was hung concerning counts one and

two, and a hung jury presents a manifest necessity for a mistrial, the jury was only hung on those two counts. Consequently, the circuit court properly declared a mistrial concerning counts one and two. However, because there was no manifest necessity for declaring a mistrial concerning counts three, four, and five, for which the jury had reached a unanimous verdict, the court abused its discretion in declaring a mistrial regarding counts three, four, and five, and this resulted in a violation of Meyer's right against double jeopardy, particularly concerning count three for which he had been acquitted.

█ We further note the fact that the second jury's verdict during the guilt phase regarding counts three, four, and five was identical to the first jury's verdict regarding guilt on those counts is not harmless error. "The Double Jeopardy Clause ... is cast in terms of the risk of hazard of trial and conviction, not of the ultimate legal consequences of the verdict." *Davis v. Commonwealth*, 561 S.W.2d 91, 94–95 (Ky.1978) (internal quotation marks and citation omitted). Therefore, because the circuit court abused its discretion in declaring a mistrial during the first trial concerning counts three, four, and five, those charges should not have been before the jury during the second trial.

## B. PREJUDICIAL INTRODUCTION OF EVIDENCE

Meyer next asserts that the introduction of evidence during the second trial concerning counts three, four, and five was prejudicial. He argues that because the jury in the first trial reached a verdict on those counts, evidence concerning those counts should not have been introduced during his second trial on counts one and

two and, therefore, this resulted in prejudice to him.

█ We begin our analysis of this issue with count three, for which the first jury found Meyer "not guilty." "[T]he Commonwealth cannot introduce evidence of charges that have been dismissed or set aside." *Cook v. Commonwealth*, 129 S.W.3d 351, 365 (Ky.2004). The Commonwealth contends that *Cook* is distinguishable from the present case because it involved the admissibility of evidence concerning prior convictions during the sentencing phase of a trial, rather than the guilt phase. However, one of the cases that *Cook* relied upon to support the aforementioned holding was *Scrivener v. Commonwealth*, 539 S.W.2d 291 (Ky. 1976). In *Scrivener*, the Supreme Court held that upon Scrivener's retrial, "the prosecuting attorney should not bring to the attention of the jury any filed away or dismissed charges against [Scrivener]." *Scrivener*, 539 S.W.2d at 292–93. Therefore, evidence concerning count three was improperly introduced during Meyer's second trial.

█ We now turn our attention to counts four and five, for which the first jury reached a verdict of "guilty," but Meyer was nevertheless subjected to a retrial on those counts. As previously explained, the circuit court should have accepted the first jury's partial verdict on these counts. Therefore, to determine whether evidence of those crimes would have been admissible during the second trial, which should have been a trial concerning counts one and two only, we examine whether evidence of those crimes would have been admissible as prior bad acts evidence. We review a circuit court's decision to admit evidence for an abuse of discretion. *See Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky.2007). Pursuant to

KRE [4] 404(b),

> [Evidence of] other crimes, wrongs, or acts [...] is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Evidence of Meyer's possession of marijuana and possession of drug paraphernalia would not have qualified as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" concerning the two charges of receiving stolen property (*i.e.*, the projectors), and the evidence likewise was not so "inextricably intertwined with other evidence essential to the case that separation of the two ... could not be accomplished without serious adverse effect on the offering party." The drug evidence was merely found in Meyer's residence during the search following his arrest concerning one of the projectors.

■■■ The Commonwealth contends that under RCr 6.18, two or more offenses may be charged in the same indictment if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan. The Commonwealth also argues that under RCr 9.12, two or more offenses may be tried together if they could be joined in the same indictment. Thus, the Commonwealth asserts that with Meyer

being in illegal possession of three stolen electronic items and two drug-related items on the same day at the same time, and in possession of four of them at the same house, the offenses easily qualify for joint indictment and trial, whether it was the first or second trial of [Meyer], and he was not prejudiced.

Apparently, the Commonwealth has forgotten that Meyer was acquitted on count three, so he was not in "illegal possession of three stolen electronic items." As for his possession of marijuana and drug paraphernalia, he was previously found guilty by a unanimous jury verdict of those counts in his first trial, so those offenses did not qualify to be jointly retried during the second trial. The Commonwealth appears to be confusing the joinder of offenses for indictment and trial purposes with the admission of prior crimes and bad acts evidence. As we previously mentioned, Meyer should not have been retried during the second trial on counts three, four, and five. Furthermore, the evidence concerning counts four and five should not have been admitted against him in his second trial, pursuant to KRE 404(b). The circuit court abused its discretion in admitting this evidence in the second trial.

In *Clark*, the Kentucky Supreme Court noted that prior bad acts evidence is usually inadmissible "because of the dangerous quality and prejudicial consequences of this kind of evidence." *Clark*, 223 S.W.3d at 96 (internal quotation marks and footnote omitted). Thus, because evidence concerning counts four and five should have been held inadmissible in Meyer's second trial, it was prejudicial to admit such evidence in the second trial.

■■■ Moreover, even if the circuit court had not abused its discretion in admitting

4. Kentucky Rules of Evidence.

this evidence under KRE 404(b), it nevertheless abused its discretion in admitting it pursuant to KRE 401 and KRE 402. In Kentucky, "relevant evidence" is defined as follows: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Only relevant evidence is admissible. *See* KRE 402. Even relevant evidence may be excluded, though, "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403.

The evidence concerning Meyer's convictions for counts four and five, *i.e.*, for possession of marijuana and possession of drug paraphernalia, was not relevant to the charges against Meyer under counts one and two, both of which charged he had received stolen property valued over $500.00 (*i.e.*, two projectors). Therefore, in addition to the evidence concerning counts four and five being inadmissible during Meyer's second trial under KRE 404(b), it was also inadmissible under KRE 401 and KRE 402 because it was not relevant.

## C. DIRECTED VERDICT

Finally, Meyer contends that the circuit court should have granted a directed verdict as to the felony versions of counts one and two because the Commonwealth failed to prove that the value of each projector was at least $500.00.

On motion for [a] directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

... [T]here must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187–88 (Ky.1991) (internal quotation marks and citation omitted).

Pursuant to KRS 514.110(3), "Receiving stolen property is a Class A misdemeanor unless: (a) The value of the property is five hundred dollars ($500) or more but less than ten thousand dollars ($10,000), in which case it is a Class D felony." "[T]he burden is on the Commonwealth to prove the value of the property received in a prosecution for that charge." *Macklin v. Commonwealth,* 687 S.W.2d 540, 542 (Ky.App.1984). "[T]he value of the stolen property on the date the offender receives it is the proper date for determining the severity of the violation." *Tussey v. Commonwealth,* 589 S.W.2d 215 (Ky.1979). "[T]he testimony of the owner of stolen property is competent evidence as to the value of the property." *Commonwealth v. Reed,* 57 S.W.3d 269, 270 (Ky.2001).

Craig Webb, who works in Information Technology in Audio/Visual Services at the University of Kentucky, testi-

fied during the second trial regarding the projectors that were the subject of counts one and two against Meyer. Webb stated that he had worked full time in the Information Technology Department at the university since 1995, and he had also worked at CompUSA in retail selling projectors previously. Webb attested that although he does not purchase the audio/visual equipment for the university, he is one of the people responsible for maintaining the database that lists the identifying numbers (e.g., serial numbers, university equipment numbers, etc.), as well as the purchase price and maintenance record, of each piece of audio/visual equipment owned by the university. Webb stated that all electronics depreciate over time, but that projectors do not depreciate as quickly as, for example, laptop computers. He explained that projectors continue to have the same functionality and retain the ability to be connected to a laptop for many years, but that the technology changes over time so that newer projectors may provide a better quality picture, such as through "HDMI."[5] He stated the projectors at issue did not have the capability to project as clear an image as many newer projectors.

Webb attested he was the person who reported to law enforcement that the university's two projectors had been stolen. The projectors were admitted into evidence at trial and Webb testified that both projectors had been damaged somewhat, presumably by the person who stole them. Webb explained that there are locations on the projectors where a cord is inserted and locks into place, and the other end of the cord is then secured around a cart upon which the projector sits. Webb attested that the person who stole them apparently did not have the key to remove the cords properly from the projectors, because that person pulled on the cords so forcefully that the plastic piece on each projector that locked the cords into the projectors was damaged.

Webb was asked about each projector. Regarding the first projector he was shown,[6] Webb testified that the university purchased that projector in December 2004, and paid approximately $2,100.00 for it brand new. When he was asked whether he knew what the value of the projector would have been in 2010, Webb responded: "There is no way to determine that, unfortunately." He was asked to explain, and he stated that if that projector was purchased new on the day of trial, the purchase price would probably be $1,100.00, but a used one would probably cost about half of that, i.e., "$550.00 [to] $600.00." He further explained that he could not say "with one hundred percent certainty" that that particular projector would cost "$500.00 [or] $800.00 if you walked out and bought it." He attested that a bulb for that projector would have to be replaced after approximately 2,000 hours of use. No evidence was introduced at trial regarding whether the projector or its bulb was still operable. However, after looking at an advertisement that Meyer had placed on Craigslist for a projector like this one, Webb opined that the $700.00–$800.00 asking price listed in the advertisement was a fair market price for that projector.

Regarding the second projector, Webb testified that the projector was bought one

5. Webb did not testify regarding what the initials "HDMI" stood for, but he implied that "HDMI" meant that projectors equipped with "HDMI" provided a clearer picture.

6. It is unclear whether the first projector Webb was shown and questioned about at trial was the subject of count one or count two of the indictment. Likewise, it is unclear which count of the indictment the second projector he testified about concerned.

month after the first projector, in January 2005. Webb attested that although he did not know how much the university paid for it, the cost was close to the same price as the first projector. Webb testified that he believed the value of the second projector as of 2010 was between $550.00 and $800.00, and that it was worth more than the first projector because the lumens were brighter.[7] However, again no evidence was introduced at trial regarding whether this projector could still operate.

In ruling on a motion for a directed verdict, the circuit court "must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth." *Benham*, 816 S.W.2d at 187 (internal quotation marks and citation omitted).

> If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Benham*, 816 S.W.2d at 187 (internal quotation marks and citation omitted).

In the present case, in a matter of minutes, Webb testified both that it was not possible to determine the value of the projectors in 2010 and that the projectors were each worth over $500.00 at that time. This testimony appears to be contradictory, but questions of witness credibility are to be resolved by the jury. There was sufficient evidence to induce a reasonable juror to find Meyer guilty of receiving stolen property valued at more than $500.00 for counts one and two. Consequently, the circuit court did not err in denying Meyer's motion for a directed verdict as to the felony versions of counts one and two.

Accordingly, the Fayette Circuit Court's judgment is affirmed in part concerning the court's denial of Meyer's motion for a directed verdict. The circuit court's judgment is also reversed in part regarding Meyer's remaining claims on appeal and this case is remanded with the following instructions: (a) the circuit court shall accept and enter the jury's guilt-phase verdicts concerning counts three, four, and five from the first trial and impanel a jury for purposes of sentencing Meyer on counts four and five of that verdict, for which he was found guilty; and (b) the circuit court shall provide Meyer a new trial on counts one and two in accord with this opinion.

ACREE, Chief Judge, concurs.

KELLER, Judge, concurs in result only.

---

7. Although there was no testimony offered on this point, the second projector appears from our review of the videotaped proceedings to be a different model than the first projector, as it is larger in size and defense counsel even noted at one point in the proceedings that the second projector was heavier than the first projector.