RENDERED: DECEMBER 13, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

DATE 13/9 Kim Redmon, DC

2017-SC-000441-DG
2017-SC-000661-DG

COMMONWEALTH OF KENTUCKY

APPELLANT/
CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
2015-CA-000737-MR
DAVIESS CIRCUIT COURT NO. 14-CR-00306

V.

MICHAEL PADGETT

APPELLEE/
CROSS-APPELLANT

## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

After a mistrial, Michael Padgett was tried and convicted by a Daviess County jury for Assault, third degree. At his second trial, he was also charged and convicted as a persistent felony offender (PFO) in the first degree. The jury recommended an enhanced sentence of ten years. The circuit court sentenced Padgett accordingly. On direct appeal, the Court of Appeals vacated his sentence, finding that the second trial violated Padgett's rights against double

jeopardy. The Commonwealth moved this Court for discretionary review, which we granted. After careful review of the record and law, we now affirm the Court of Appeals.

## I. BACKGROUND

On February 9, 2014, Padgett was housed at the Daviess County Detention Center (DCDC), in the B-pod. He was in a cell alone and covered the window to his cell, so that on-duty deputies could not see inside. He proceeded to kick the door, causing a loud disturbance. Deputies ordered Padgett to remove the obstruction in the window, but he refused. The officers entered Padgett's cell, handcuffed him, and removed him from the cell to place him in the "Emergency Restraint Chair" (ERC). The ERC is a chair used to restrain prisoners when they are potential dangers to themselves or others; it binds them to their chair at several points (waist, feet, arms) so that the prisoner is prohibited from moving and causing potential damage. Chad Payne, then Sergeant Payne, was the supervising officer on duty. He responded to the scene as Padgett was being removed to the ERC. During the melee, Padgett spit in Payne's face. Payne ordered another officer to tase Padgett and Padgett was then successfully restrained.

The Commonwealth disclosed two reports to the defense regarding Payne: (1) a report of excessive force with another inmate and (2) a write-up and demotion for making false and unauthorized statements. Payne was demoted from Sergeant to Deputy as a result of the second report. The Commonwealth moved, prior to trial, to exclude "the materials" as irrelevant.

2

The defense objected, arguing that the report of excessive force was relevant to Padgett's claim of self-defense and that both reports were admissible for impeachment purposes. On September 22, 2014, the court heard arguments on the motion. Relevantly, there was no written order from the court on this motion.[1] The hearing itself was an amalgamation of multiple pre-trial issues including jury instructions and the availability of self-protection as a defense to third-degree assault; intertwined within these arguments was reference to the evidence regarding Payne. The trial judge's order was not abundantly clear; however, at that time, the judge stated:

> For impeachment purposes, that may be permitted but I'm just telling you, I don't see it right now. And all I can tell you is that on your motion, I can exclude it up to a point but during trial, depending upon what the testimony is, I very well might allow it. But I can't see it right now. I don't see me allowing that evidence in.

It would seem that what "may be permitted" were the reports on Payne's disciplinary history. At the parties' questioning, the court continued:

> Oh, it might [be relevant] if what he did was improper. I can't see it. I don't see it. But it might come off of the witness stand that somehow this was improper. I don't know. I don't hear – you haven't told me if – right now, I'm not going to admit that ... evidence as we sit here. You know. And I think there has to be something more ... But I don't want to preclude that. At trial, you never know what comes up half the time ...
> I'll put it this way. If that evidence – that evidence, that information um will not be permitted at trial unless and the only thing that I think I can see as far as impeachment is somehow during the testimony of Sergeant Payne, maybe somebody else too, but at that point it becomes necessary – I can't see it. I – I don't see it. But I

---

[1] The Commonwealth cites to the Trial Record at pages 21-22 for the trial court's order. However, this citation only leads to the Commonwealth's *motion*; no such written order from the court is contained anywhere in the record prior to Padgett's first trial and the order of mistrial.

3

don't want to rule right now with finality, saying there's no – under no situation or circumstances it's not coming in –

...

Right. I'm saying that, unless there is something during the testimony or some evidence that somebody puts on that all of a sudden makes that significant and relevant, it's not going to be used at trial.

In response to the court's statements, defense counsel attempted to clarify further:

Judge, if I may address that – I think that you're talking on the disciplinary report? The write-up? Okay. As to the demotion – which is a separate issue, um, I did want to mention that, of course, anytime there's instances of dishonesty that you cross-examine a witness on, usually it's about things that aren't necessarily directly connected but you can always question somebody about their veracity and truthfulness ...

The parties then transitioned into discussion on self-protection as a defense to third-degree assault and self-defense in response to law enforcement.

Padgett proceeded to trial over the next two days. On the morning of September 24, 2014,[2] the Commonwealth called Chad Payne to the witness stand. The direct examination proceeded without incident. The following exchange occurred during cross-examination, however:

DC[3]: So you were a supervising officer at the time of this incident?
CP[4]: [*Nods*]
DC: And at the time of this incident, what was your rank?
CP: Sergeant.
DC: Are you a sergeant now?
CP: No.

---

[2] At the beginning of proceedings on September 24, the judge stated that the parties had already discussed two motions in limine in chambers at which he "reiterate[d]" his ruling from the previous day. This discussion was not part of the record and, thus, it is unclear whether this argument was recorded or preserved. As such, this Court cannot conclude whether any alleged ruling was made clearer as a part of those discussions.

[3] Defense counsel.

[4] Chad Payne.

4

CW[5]: Approach, your Honor.
[*At bench*]
TJ[6]: What was the purpose of that?
DC: I was just inquiring about his rank. I'm not going any further.
TJ: You better not go any further.
DC: I'm not.
CW: Your Honor, you can't un-ring a bell. I have to ask for a mistrial. We have been over this and uh – [defense counsel] – we *just* went over this. This is totally uncalled for.
TJ: Yeah.
CW: And you cannot un-ring that bell. It is out there. It's before this jury. And this has wasted two days of everybody's time let alone a whole lot more.
DC: Judge, every time somebody gets up on that stand, they ask them where they worked, what their position is. We have to—
TJ: [Defense counsel], you know better than that.
DC: I'm not going any further. Judge, it ends right there.
CW: It's done. That was the whole purpose. We talked about it prior to this before we started, your honor. That was totally [*unintelligible*]. It was totally improper. I'm asking that we – I don't have a choice but to ask for a mistrial.
DC: Judge, I believe if the court wants to admonish the jury –
TJ: You know, we've gone over this.
CW: Can we take a recess?
TJ: Excellent idea. Then I can see you all in chambers.

The argument on the Commonwealth's motion for mistrial was abbreviated:

TJ: [Defense counsel] has violated the conditions of an order I entered earlier and I don't see uh any justification whatsoever for that question. And uh, [the prosecutor] has moved for a mistrial. And uh- now I'm wondering whether I can grant a mistrial or whether an admonition would be appropriate. But uh I don't know what I can do.
DC2[7]: Your Honor, if I may – I – there's not been any mention of a demotion or promotion, I think, at this point.
TJ: [*laughing*] He just said it was!
DC2: No, what he said was are you – I'll let him—
DC: I asked him if he was a sergeant at the time. And then I asked him if he was no longer a sergeant. I didn't ask him if he's moved up or down.

---

[5] Commonwealth.
[6] Trial judge.
[7] Padgett's second defense counsel, who served as first-chair throughout the trial. However, it was Padgett's other counsel that questioned Payne.

TJ: I don't see what the purpose of the question was.

DC: Judge, every single time the Commonwealth puts a deputy on –

TJ: I'm going to grant a mistrial. This is crazy. I – we, we told you from the beginning that we are not getting into that. And uh- well, I don't mean to get upset. But I just hate to waste all the time that we have on something –

DC: That wasn't my intention, Judge and I apologize –

TJ: There is no other – I have no other reason to expect that that question had anything other than to uh bring out the fact that Deputy Payne was demoted. I assume – there's no other basis for it.

DC2: Your honor, I would respectfully request that we not do a mistrial. We are second day, we're nearly done. I believe an admonition is satisfactory. And we don't even have to go into any more about it. We can simply move on with the rest of this trial. I don't believe that anything more that's been said is going to harm this jury. I think they just need to see the evidence, weigh it, and make a decision. I-I think that a mistrial is a step we don't need to take. I think that we are able to continue with this trial.

DC: And Judge, I would ask, for the record, to be stated, what the implication is. If the implication is that he was demoted because of this incident, that's simply remedied by them asking, were you sanctioned for this incident? We don't have to get any further for that.

CW: And Judge – we have – we have

TJ: We've already had –

CW: We've had that hearing, your honor – I'm sorry.

TJ: Yeah, yeah, we had. I'm going to grant a mistrial. And uh I don't want to do so. Um mistrials are rare. We um – a lot of time, a lot of expense, a lot of expense. And um this is – this is unnecessary. Inappropriate. Can you call the jury back in?

The court then dismissed the jury and thanked them for their service. After Padgett's mistrial, the Commonwealth then indicted him as a PFO, first-degree. The parties proceeded to the second trial early the next year, at which Padgett was convicted of one count of third-degree assault. The jury recommended a sentence of one year to serve, but the sentence was enhanced to ten years after Padgett was found guilty on the PFO count. After the conviction was vacated by the Court of Appeals, this Court accepted discretionary review.

6

## II. STANDARD OF REVIEW

"It is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion." *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Webb v. Commonwealth*, 387 S.W.3d 319, 324 (Ky. 2012) (quoting *Anderson v. Commonwealth*, 231 S.W.2d 117, 119 (Ky. 2007) (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). Additionally, "a mistrial is an extreme remedy and should be resorted to only when there is a *fundamental defect* in the proceedings and there is a '*manifest necessity* for such an action.'" *Woodard*, 147 S.W.3d at 68. (emphasis added). The cause of the need for mistrial "must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in *no other way*." *Id.* (emphasis added).

## III. ANALYSIS

<u>Double Jeopardy and the Mistrial Exception</u>

"No person shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Kentucky has embodied this same principle in its own Constitution: "No person shall, for the same offense, be twice put in jeopardy of his life or limb ..." Ky. Const. § 13. Despite these constitutional provisions, "there are occasions when a second trial may be had

7

although the jury impaneled for the first trial was discharged without reaching a verdict and without the defendant's consent." *Downum v. United States*, 372 U.S. 734, 735-36 (1963). "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Wiley v. Commonwealth*, 575 S.W.2d 166, 169 (Ky. App. 1978) (quoting *Gori v. United States*, 367 U.S. 364, 368 (1978)).

"Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury or contemporaneously-impaneled alternates is barred unless 1) there is a 'manifest necessity' for a mistrial or 2) the defendant either requests or consents to a mistrial." *Meyer v. Commonwealth*, 393 S.W.3d 46, 50 (Ky. App. 2013) (quoting *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) (internal quotation marks and citation omitted)). Thus, "a retrial is precluded if the mistrial was granted without the defendant's consent and in the absence of a manifest necessity to do so." *Grimes v. McAnulty*, 957 S.W.2d 223, 224 (Ky. 1997) (citations omitted).

Jeopardy had clearly and, unrefutably, attached in Padgett's case. Padgett stringently objected to the granting of a mistrial. Thus, unless there was a manifest necessity for a mistrial in his case, his retrial was barred by both the U.S. and Kentucky Constitutions. To understand what may qualify as

8

manifest necessity, it is important to understand the exact purpose of a mistrial and what a mistrial is *not* intended to do.

Mistrial as an Extreme Remedy

"[A] mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'" *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (citing *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002)). "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Woodard*, 147 S.W.3d at 68 (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996)). A trial court's decision to grant a mistrial must be supported by a "manifest necessity" for that decision in the record. *Wiley*, 575 S.W.2d at 168 (citations omitted). This necessity must be "an urgent and real necessity." *Id.* (quoting *Baker v. Commonwealth*, 132 S.W.2d 766 (Ky. 1939)).

A mistrial is reserved for unique circumstances in which the prejudice is so great that a trial cannot continue fairly for both parties. "[T]he power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) (quoting *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky. 2000) (citing *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991))).

9

## Mistrial is *not* a Sanction Tool for the Court

A mistrial is *not*, however, to be used as a sanction tool by the trial court. The trial court maintains control over the courtroom through several other methods, including Kentucky Rule of Evidence (KRE) 611(a) and through its contempt power. The discretion to grant a mistrial is *not* for the purpose of punishing a party for what the court deems as a willful violation of its order. A mistrial is intended to cure prejudice, not to punish counsel or parties. "[I]t is the effect that must meet the mistrial standard, not the audacity of the perpetrator's defiance." *Sneed v. Burress*, 500 S.W.3d 791, 805 (Ky. 2016) (Venters, J., dissenting).

When determining whether to grant a mistrial, the trial court must examine the jury's reaction to what has actually been uttered or presented to them. The circumstances must be scrutinized from the jury's point of view, not the court's. The court has much more information than the jury, often providing much-needed context to otherwise innocuous statements. It is the prejudice that is of import in making the mistrial decision; if the jury's perception has been so greatly affected by the conduct that proceeding would be unfair, then a mistrial would be appropriate. But, if an otherwise flagrant violation of a court order leaves the jury merely unaffected, or is cured by admonition, then a mistrial is improper, even given a party's impermissible breach of court order. Notably, even an attorney's *attempt* to prejudice a jury does not always equate to actual prejudice; it is the presence of real and tangible prejudice that creates the need for a mistrial.

10

## Manifest Necessity and Abuse of Discretion

As previously stated, the decision to grant a mistrial is within the sound discretion of the trial court. *Woodard*, 147 S.W.3d at 68 (citing *Bray*, 68 S.W.3d at 383). This Court still adheres to the legal rule that a trial court is in the best position to determine the appropriateness of a mistrial, given the circumstances of each individual case. *See Gray v. Goodenough*, 750 S.W.2d 428, 429 (Ky. 1988). "The interest in orderly, impartial procedure would be impaired if [the trial judge] were deterred from exercising that power [of discretion] by a concern that at any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred." *Grimes*, 957 S.W.2d at 225 (quoting *Arizona v. Washington*, 434 U.S. 497, 513 (1978)). "Declaring a mistrial is an extreme, but sometimes necessary measure available to the trial arbiter." *Sneed*, 500 S.W.3d at 795. However, our stance on review does not require this Court to blindly adhere to a decision made in a trial court's discretion when such a decision was unsound.

In deciding whether manifest necessity exists, "the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Grimes*, 957 S.W.2d at 224 (quoting *United States v. Jorn*, 400 U.S. 470, 486 (1971)). A "reviewing court ... [should] satisfy itself, 'by close examination of the record,' ... that the trial court did not act precipitately, but evinced an appropriate concern for the possible double

11

jeopardy consequences of an erroneous ruling; gave both the defense counsel and the prosecutor a full opportunity to explain their positions; and made a ruling neither irrational nor irresponsible in light of the particular facts." *Sneed*, 500 S.W.3d at 803 (Hughes, J., concurring) (quoting *United States v. Sloan*, 36 F.3d 386, 400 (4th Cir. 1994); citing *Washington*, 434 U.S. at 514-15).

Here, there was no manifest necessity for the mistrial. As Justice Venters noted in his dissenting opinion in *Sneed*, "a mistrial is acceptable *only* if there is an overwhelming probability that the jury will be unable to follow the court's admonition and a strong likelihood that the effect of the inadmissible evidence would be devastating; or if the information presented lacked a factual basis and was inflammatory or highly prejudicial." *Sneed*, 500 S.W.3d at 805 (Venters, J., dissenting). Having "viable options precludes a finding of manifest necessity[.]" *Cardine*, 283 S.W.3d at 650.

In *Commonwealth v. Scott*, this Court determined there was no manifest necessity to support the trial court's grant of a mistrial. 12 S.W.3d at 685. During trial, the prosecutor was showing a BB pistol to the jury; the judge asked him if it was loaded. *Id.* at 683. The jury laughed and one juror stated, "He dudn't [*sic*] know." *Id.* He proceeded to make further comments about the gun, at the expense of the prosecuting attorney. *Id.* After the lunch break, the Commonwealth moved for a mistrial, citing the juror's statements as a hostile attitude, showing it would never receive a fundamentally fair trial. *Id.* "[T]he high degree of necessity required for granting a mistrial was not demonstrated

12

by Juror B.'s perceived hostility toward the prosecutor." *Id.* at 685. Although the moment may have made the prosecutor "feel foolish or inept due to an unexpected turn of events[,]" such does not mean the "event would have prevented the Commonwealth from receiving a fundamentally fair trial." *Id.* The parties did not question the juror individually; "[t]here [was] nothing in the record ... indicating that the jurors were biased against the Commonwealth or were unable to assess the evidence in an impartial manner." *Id.* "[I]n the face of a mistrial and the potential for a bar to re-trial, other remedies should have been pursued." *Id.*

The Sixth Circuit determined manifest necessity was similarly lacking in *Taylor v. Dawson*, 888 F.2d 1124, 1125 (6th Cir. 1989). Defendant, Taylor, was placed on trial three separate times for the killing of her boyfriend. *Id.* The first trial was reversed; the second trial ended in mistrial. *Id.* The third trial ended in Taylor's conviction and affirmed on all direct appeals. *Id.* at 1130-31. She then appealed to the Sixth Circuit Court of Appeals for a writ, claiming her subsequent prosecution was in violation of the prohibition against double jeopardy. *Id.* at 1125. At the second trial, the prosecutor moved the court to exclude certain prior bad acts of the decedent. *Id.* at 1126. The judge did not make a formal ruling, instead stating that the prosecution could object after any introduction of the evidence and the court would rule at that time. *Id.* at 1126-27.

Of course, at trial, the decedent's prior bad acts were introduced at various times. *Id.* at 1127-29. The trial court granted a mistrial at the

13

Commonwealth's request, stating that the parties violated the court's admonition that "there should be no evidence of any prior criminal acts of either of the parties involved." *Id.* at 1128. However, as the Sixth Circuit noted from the record, "instead of granting the prosecutor's motion ..., the court told the prosecutor he could object as the evidence came in, with the court ruling when it was seen how the evidence developed." *Id.* at 1129. The prosecution made only two specific objections to such prior bad acts and one of the objections was overruled by the trial court. *Id.* "The notion that the defense was somehow guilty of 'misconduct' in this respect is simply preposterous." *Id.* Interestingly, at the third trial, "the Commonwealth made no attempt to exclude the evidence that had led to the earlier mistrial, and the evidence all came in." *Id.*

The Sixth Circuit held there was no manifest necessity for a mistrial. In so finding, the Court determined there was no clear ruling and no clear error, creating any need for a mistrial.

> If the trial court thought that the testimony about [decedent]'s bad acts was reaching the point where it might unfairly prejudice the prosecution, it was up to the court to make that determination known to defense counsel. Fundamental fairness required nothing less-for otherwise, counsel would have no way of knowing that further testimony along this line might result in a mistrial.

*Id.* at 1132. Despite the court's reference to counsel's violation of an order as grounds for a mistrial, "[n]o such ruling had been made, as far as the record discloses, before the court declared a mistrial." *Id.* at 1133. The Court determined the trial court's grant of mistrial was "erratic," "out-of-the-blue-

14

mistrial," "irresponsibl[e]," and "irrational[]." *Id.* (internal citations omitted). "One cannot read the transcript of Ms. Taylor's aborted trial without experiencing a sense of amazement when, without any apparent warning at all, the trial court suddenly declares a mistrial because the jury has heard a snatch of testimony which, as we know from the subsequent opinions of Kentucky's appellate courts, would ordinarily be *admissible.*" *Id.* (emphasis original).

As in *Taylor*, the trial court's decision here seemed "out-of-the-blue." From a bystander's viewpoint, without any reference to prior rulings, the snippet of testimony between defense counsel and Payne was hardly objectionable. The information gleaned from those few moments was *not* prejudicial to the point of requiring a mistrial. The jury, at most, and assuming the most negative implication possible, determined that Payne had been demoted from his former rank of Sergeant. It had no information as to the reason for such a demotion. Fairly, many lay jurors may not even connect a change from Sergeant to Deputy as a demotion. It would take a further step of assumption for this Court to hold that the jury not only, from these innocuous questions, determined that Payne had been demoted but that he had been demoted for some conduct that had a bearing on his credibility as a witness. Even if the jury had gathered some objectionable inference from the testimony, an admonition would have been more than adequate to remedy any prejudice.

In the absence of manifest necessity, the court's decision to grant a mistrial was an abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004) (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted); citing *Kentucky Nat. Park Com'n ex rel. Commonwealth v. Russell*, 301 S.W.2d 214, 217 (Ky. 1945)). "Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision." *Russell*, 301 S.W.2d at 217. The court's decision to grant a mistrial was made in the heat of the moment in trial, admittedly, but it was made without being supported by firm, sound legal principles. The decision was arbitrary, without explanation of the prejudice it intended to cure through this extreme remedy. Without a firm basis from the record to find a manifest necessity for a mistrial, we must hold that the trial court's decision was an abuse of discretion.

The Commonwealth attempts to compare Padgett's first trial to the case of *Sneed*, in which this Court determined there was manifest necessity for a mistrial. There, during opening statement, defense counsel stated that one of the Commonwealth's witnesses was "us[ing] untruthfulness as a mechanism for revenge." *Sneed*, 500 S.W.3d at 792. The Commonwealth objected and moved for a mistrial because of the defense counsel's characterization of the witness. *Id.* The court denied the mistrial but admonished the jury. *Id.* Upon

16

continuing with opening, defense counsel *again* stated that there was evidence as to the victim's lying and stated her lying was "a known issue." *Id.* The Commonwealth again moved for a mistrial; this time, the court granted the motion. *Id.*

This Court determined that "[b]ecause defense counsel's statements constituted improper evidence which prejudiced the Commonwealth's right to a fair trial, we cannot say that a mistrial was an inappropriate remedy here." *Id.* at 795. It was a clear rule of law that counsel cannot state that a witness or defendant is lying. *Id.* (citing *Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky. 1997) (citation omitted)). "The remarks by Sneed's attorney that triggered the Commonwealth's second mistrial motion occurred within minutes after the jury was admonished to disregard counsel's previous statement indicating that one of the Commonwealth's witnesses was lying." *Sneed*, 500 S.W.2d at 795. "[D]efense counsel's disregard for the trial court's admonition in the present case created the circumstances necessitating a mistrial." *Id.* The Court determined a second admonition would have been fruitless at that point; "[d]efense counsel's disregard for the court's ruling likely confused the jury and certainly brought additional attention to the disputed matter." *Id.*

"An isolated or discrete statement erroneously impugning the credibility of witnesses may be considered harmless." *Id.* (citing *Meece v. Commonwealth*, 348 S.W.3d 627, 664-65 (Ky. 2011)). However, the defense counsel's statements in *Sneed* "were based on evidence that was inadmissible, highly prejudicial, and in direct contradiction to the court's previous admonition not

17

to characterize any witness as a liar." *Sneed*, 500 S.W.3d at 796. As such, the statements "prejudiced the Commonwealth's right to a fundamentally fair trial and, thus, created the manifest necessity for a mistrial." *Id.*

The case now before this Court is in stark contrast to *Sneed*. First, like in *Taylor*, there was no clear order from the trial court on the Commonwealth's motion in limine. Second, the information presented to the jury was not of the same inflammatory nature as in *Sneed*. The Commonwealth knew the incidents leading to Payne's demotion, and was thus able to infer the impugning of his character by the questions. However, that prejudice had not been displayed to the jury at that point. An unoffending question about rank did not, under these circumstances, create the prejudicial effect that defense counsel's statements had in *Sneed*. In *Sneed*, additionally, the trial court gave defense counsel an opportunity to correct her objectionable actions and defense counsel continued in her conduct. Trial counsel was aware that the statements made were leading to prejudice and persisted. The prejudice, then, became too great to overcome through other methods. Padgett, in contrast, was given no such opportunity. The opportunity was still acutely available, given the harmless questions asked of Payne prior to the Commonwealth's motion for mistrial. There was also still ample opportunity for an admonition as needed.

Additionally, the trial court failed to provide the parties with an adequate opportunity to address the objection to a mistrial. A trial judge should "g[i]ve both defense counsel and the prosecutor full opportunity to explain their

18

positions on the propriety of a mistrial." *Grimes*, 957 S.W.2d at 227 (quoting *Arizona*, 434 U.S. at 515-16). If, in such circumstances, "the trial judge act[s] responsibly and deliberately, and accord[s] careful consideration to [defendant]'s interest in having the trial concluded in a single proceeding[,]" then such a decision will comport with a proper exercise of discretion. *Grimes*, 957 S.W.2d at 227 (quoting *Washington*, 434 U.S. at 515-16). In the midst of defense counsel's arguments as to the propriety of a mistrial, the trial judge cut him off mid-sentence and stated he was going to grant a mistrial. There was *no discussion* by the parties of the actual prejudice that had occurred. Defense counsel even asked for a clarification of the "implication" of the line of questioning with Payne yet nothing was explicitly stated on the record. The trial judge here failed to give due consideration to the interests of the defendant and the legitimacy of counsel's arguments.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals and vacate the judgment of the Daviess Circuit Court. Because we affirm the Court of Appeals, we do not address the remaining issues Padgett has raised in his cross-appeal. The Court of Appeals correctly determined there was no manifest necessity for a mistrial in Padgett's case. As such, his retrial was barred by the Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution. His conviction must be vacated. A mistrial is an extreme remedy and should be reserved for the rare occasions in which is it

19

manifestly necessary to protect fundamental fairness and the rights of the parties involved.

All sitting. All concur.


COUNSEL FOR APPELLANT/CROSS APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General


COUNSEL FOR APPELLEE/CROSS APPELLANT:

Emily Holt Rhorer
Assistant Public Advocate

Shannon Renee DuPree
Assistant Public Advocate